# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

IAN POLLARD, on behalf of himself　　　)　　　　CASE NO.: 4:13-cv-00086-ODS
and all others similarly situated,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Plaintiffs,　　)
　　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
REMINGTON ARMS COMPANY, LLC.,　　)
SPORTING GOODS PROPERTIES, INC.,　　)
and E.I. DU PONT DE NEMOURS AND　　)
COMPANY,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendants.　　)

**PLAINTIFFS' STATEMENT OF REASONS AND SUGGESTIONS
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# Table of Contents

I.    Introduction ................................................................................................................. 1

II.   Factual Background ...................................................................................................... 4

III.  Legal Standard for Motion to Dismiss ....................................................................... 5

IV.   Argument ...................................................................................................................... 6

   A.   The Economic Loss Rule Does Not Bar Plaintiff's Strict Liability and Negligence
        Counts................................................................................................................... 6

   B.   Plaintiff's Negligence Claims Do Not Fail For Any Additional Reasons .......................... 7

   C.   Plaintiff Adequately Pleads MMPA Claims .............................................................. 8

   D.   Plaintiff Sufficiently Pleads Common Law Fraud ...................................................... 9

      1.   Plaintiff Sufficiently Pleads Fraud Under Rule 9(b). ........................................... 9

      2.   Plaintiff Adequately Alleges Reliance. .............................................................. 13

      3.   Defendants' History of Concealing the Defects in the Rifles Adequately Alleges
           Plaintiff's Inability to Discover the Fraud ......................................................... 13

   E.   Plaintiff's Warranty Claims (Counts I and VI) Must Not Be Dismissed ........................ 17

      1.   Plaintiff's Warranty Claims Are Not Barred by the Statute of Limitations................. 17

      2.   Plaintiff's Warranty Claims Are Broader than the Written Warranty Issued at the Time
           of Purchase. .................................................................................................. 19

      3.   Plaintiff Alleges Reliance on the Express Warranty .......................................... 19

   F.   Plaintiff Adequately Pleads His MMWA Claims ........................................................ 20

   G.   Plaintiff Alleges Cognizable Unjust Enrichment Claims .............................................. 21

   H.   Plaintiffs' Adequately States a Claim for Declaratory Relief ...................................... 23

V.    Conclusion ................................................................................................................. 25

Case 4:13-cv-00086-ODS   Document 38   Filed 04/25/13   Page 2 of 30

**Cases**

*Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775 (7th Cir. 2011) ........................................... 21

*Aschcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 5, 6

*Blankenship v. Chamberlain*, 695 F. Supp. 2d 966 (E.D. Mo. 2010) ........................................... 19

*Boelens v. Redman Homes, Inc.*, 748 F.2d 1058 (5th Cir. 1984) .................................................. 21

*Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585 (8th Cir.2009) ..................................................... 6

*Brooks v. Remington Arms Co., Inc.*, No. 1:09-CV-01054, 2010 WL 6971894 (W.D. Ark. Oct. 27, 2010) .......................................................................................................................... 3, 4

*Byrd v. BJC Health Sys.*, 4:11CV1571 HEA, 2013 WL 1581420 (E.D. Mo. Apr. 12, 2013) ...... 22

*Chapa v. Garcia*, 848 S.W.2d 667 (Tex. 1992) .................................................................... 15, 16

*City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181 (Mo. Ct. App. 2004) ......... 23, 24

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) ........................... 21

*Clevenger and Wright Co. v. A.O. Smith Harvestore*, 625 S.W.2d 906 (Mo. Ct. App. 1981) ....... 7

*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ............................................................ 9

*Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. 1978) ............................................................... 7

*Garrett v. Cassity*, No. 4:09-cv-01252, 2011 WL 3235633 (E.D. Mo. Jul. 28, 2011) ................ 22

*Gibson v. Reliable Chevrolet, Inc.*, 608 S.W.2d 471 (Mo. Ct. App. 1980) ................................... 7

*Gomes v. Am. Century Companies, Inc.*, No. 12-1639, 2013 WL 1235238 (8th Cir. Mar. 28, 2013) .......................................................................................................................................... 5

*Govreau v. Albers*, 2:10-CV-4135-NKL, 2010 WL 4817143 (W.D. Mo. Nov. 22, 2010) ........... 9

*Graham v. Goodman*, 850 S.W.2d 351 (Mo. 1993) .................................................................... 23

*Hartman v. Remington Arms Co., Inc.*, 143 F.R.D. 673 (W.D. Mo. 1992) ............................ 15, 16

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758 (Mo. 2007) ............................ 13, 15

*Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782 (8th Cir. 2009) ....................................... 20

*Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010) ....................................................... 22

*Hull v. Remington Arms Co., Inc.*, CV-10-05010-RBL, 2011 WL 338803 (W.D. Wash. Feb. 3, 2011) ................................................................................................................... 15

*In re Apple iPhone 3G Products Liab. Litig.*, 859 F. Supp. 2d 1084 (N.D. Cal. 2012) ............... 21

*Johnson v. Berry*, 171 F. Supp. 2d 985 (E.D. Mo. 2011) ....................................................... 17

*Kansas City Downtown Minority Dev. Corp. v. Corrigan Associates, Ltd. Partnership*, 868 S.W.2d 210 (Mo. Ct. App. 1994) ............................................................................. 10

*Kinzer & Cherry v. Remington Arms Co.*, No. 09-cv-1242 (W.D. Ok. Sept. 1, 2010, Oct. 28, 2011, & Sept. 4, 2012)) ........................................................................................ 2, 3, 4

*Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104 (8th Cir. 1988) ................................... 1, 4, 5

*Little Gem Life Sciences, LLC v. Orphan Med., Inc.*, 537 F.3d 913 (8th Cir. 2008) .................. 10

*Mays-Maune & Associates, Inc. v. Werner Bros., Inc.*, 139 S.W.3d 201 (Mo. Ct. App. 2004) ... 22

*McCormick v. Remington Arms Co.*, No. 12-cv-215 (W.D. Ok. Sept. 4, 2012) .................... 2, 3, 4

*McCrary v. Truman Med. Ctr.*, 916 S.W.2d 831 (Mo. Ct. App. 1995) ..................................... 18

*Ozark Purchasing LLC v. Falcon Steering Sys., Inc.*, 12-3415-CV-S-ODS, 2013 WL 708950 (W.D. Mo. Feb. 26, 2013) ...................................................................................... 22, 23

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539 (8th Cir. 1997) ................................................. 9

*Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167 (Tex. 1993) .................................... 15

*Rodgers & Brooks v. Remington Arms Co.*, No. 09-cv-1054, 2010 WL 6971894 (W.D. Ark. Oct. 27, 2010), 2011 WL 2746150 (W.D. Ark. July 12, 2011). .............................................. 2, 3

*Rucker v. U.S. Fidelis, Inc.*, 4:09-CV-670, 2009 WL 2390580 (E.D. Mo. July 31, 2009) ............ 9

*Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736 (8th Cir. 2002) .............................. 9, 10

*Schierding v. Missouri Dental Bd.*, 705 S.W.2d 484 (Mo. Ct. App. 1985) .............................. 23

*Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004) .............................................. 21

*Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525 (8th Cir. 2009) ................................. 20

*Stephens v. Arctic Cat, Inc.*, 4:09-CV-2131 AGF, 2012 WL 628867 (E.D. Mo. Feb. 27, 2012) ... 9

*Tilley v. Franklin Life Ins. Co.*, 957 S.W.2d 349 (Mo. Ct. App. 1997) .................................... 17

iii

*Toben v. Bridgestone Retail Operations, LLC*, 4:11-CV-1834, 2012 WL 3548055 (E.D. Mo. Aug. 16, 2012) ................................................................................................. 9

*Ullrich v. CADCO, Inc.*, 244 S.W.3d 772 (Mo. Ct. App. 2008) .................................... 8

*United States ex rel. Costner v. URS Consultants, Inc.,* 317 F.3d 883 (8th Cir. 2003) ................ 9

*Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893 (8th Cir.2010) ...................................... 6

**Statutes**

15 U.S.C. § 2301 *et seq.*................................................................................ passim

15 U.S.C. § 2303 ................................................................................................ 21

15 U.S.C. § 2304 ................................................................................................ 21

15 U.S.C. § 2304(a)(1) ....................................................................................... 21

15 U.S.C. § 2304(d) ........................................................................................... 21

15 U.S.C. § 2310(d) ........................................................................................... 20

Mo. Rev. Stat. § 400.2-313.1(a) ....................................................................... 19

Mo. Ann. Stat. § 400.2-725 ............................................................................... 17

Mo. Ann. Stat. § 407.010 *et seq.*..................................................................... passim

Mo. Rev. Stat. § 516.100 ................................................................................... 18

Mo. Rev. Stat. § 516.120 ................................................................................... 18

Mo. Rev. Stat. § 516.280 ................................................................................... 17

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................... 9, 10

Fed. R. Civ. P. 8(d)(2).................................................................................. 22, 23

Fed. R. Civ. P. 9(b) ............................................................................... 8, 9, 10, 13

Fed. R. Civ. P. 12(b)(6)............................................................................... 2, 5, 19

Case 4:13-cv-00086-ODS   Document 38   Filed 04/25/13   Page 5 of 30

## I.     Introduction

For more than 60 years, Defendants have knowingly manufactured, marketed, and sold millions of defective Remington-branded Model 700 Rifles[1] to consumers throughout the United States. Each of these Rifles conceals the same devastating defect – the design of the trigger assembly allows the Rifles to fire without the trigger being pulled. The defect was first discovered and documented by Remington in internal documents almost immediately following the production of the first rifles containing the Walker Fire Control in 1948. Since that time, Defendants have paid millions to settle, and keep confidential, scores of personal injury cases where individuals were severely injured or killed by unintended firings of the Model 700 Rifles without the trigger being pulled.[2] Despite an ever-growing number of fatalities, grievous injuries, and millions paid in settlements, Defendants refuse to acknowledge that the Model 700 Rifles are defective – much less take any steps to warn consumers about the Rifles' dangers or offering to replace the defective trigger assembly with a safer alternative at no cost. Instead, Defendants continue to engage in a deceptive campaign to blame all unintended firings of the Rifles on the user, ignoring indisputable evidence of the Rifles' defect known to and documented by Defendants in internal records dating back to just after World War II.

Plaintiff filed this CAC in order to seek redress for the economic losses he and the proposed Class have suffered, and to force Defendants to act as responsible corporate citizens by educating their customers about the dangers of the Model 700 Rifles, replacing the defective trigger assemblies, reimbursing Plaintiff and the proposed Class who have incurred costs in replacing the trigger assemblies, or paying to allow the Plaintiff and proposed Class to replace

---

[1] For the purposes of this memorandum, all capitalized terms have the same meaning as defined in the Class Action Complaint (the "CAC"), ECF No. 1.

[2] *See, e.g., Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1106-07 (8th Cir. 1988). Due to confidentiality restrictions of other settlements, counsel for Plaintiffs is unable to provide additional information at this time.

Case 4:13-cv-00086-ODS   Document 38   Filed 04/25/13   Page 6 of 30

the trigger assemblies on their own. Rather than acknowledge the defect in the Model 700 Rifles and undertake the steps necessary to protect their customers and bystanders in the vicinity of someone handling a Model 700 Rifle, Defendants filed this motion to dismiss, ECF No. 25, (the "MTD") under Federal Rule 12(b)(6). However, Plaintiff's 42-page CAC is a fully fleshed out pleading in conformity with Rule 12(b)(6). The CAC adequately pleads facts regarding not only Defendants' historic disregard for the lives and safety of their customers and bystanders despite knowledge of the Model 700 Rifles' defects – including specific quotes from Remington's internal documents cataloging this flawed and dangerous defect – but also regarding Defendants' continued denial of responsibility for economic damages. In addition, the CAC sets forth with particularity the causes of action, underlying factual predicate and grounds for the relief requested. Thus, the CAC provides adequate notice of the Plaintiff's claims with sufficient particularity, and the MTD should be denied.

At the outset, Defendants' misleading characterization of the CAC should be rejected. Defendants claim that the CAC "is just one of several recent attempts to pursue baseless economic-loss claims" similar to cases that were "dismissed . . . for failure to allege cognizable claims." MTD, at 1 (citing *McCormick v. Remington Arms Co.*, No. 12-cv-215 (W.D. Ok. Sept. 4, 2012); *Kinzer & Cherry v. Remington Arms Co.*, No. 09-cv-1242 (W.D. Ok. Sept. 1, 2010, Oct. 28, 2011, & Sept. 4, 2012)); *Rodgers & Brooks v. Remington Arms Co.*, No. 09-cv-1054, 2010 WL 6971894 (W.D. Ark. Oct. 27, 2010), 2011 WL 2746150 (W.D. Ark. July 12, 2011). That statement is patently false and misleading. Those cases were dismissed based on a finding that the class representatives did not have cognizable claims, one due to the fact his rifle had not experienced a misfire and the other due to the lack of privity, unlike Plaintiff here. Importantly, those orders did not address the merits of the allegations against Defendants regarding the Model 700 Rifles, which are supported by numerous personal injury cases and court opinions over the

life of these popular, but defective Rifles. The Defendants' attempt to misdirect the Court's proper inquiry should be disregarded.

In *McCormick*, the court dismissed the plaintiff's claims because he did not allege that "his Model 700 had ever fired without a trigger pull," he had "failed to state a claim for breach of implied warranty under Delaware law." MTD, Ex. A, at 1, 5. Similarly, in *Rodgers*, the court dismissed the plaintiffs' claims under Arkansas law because plaintiffs "d[id] not claim in their amended complaint that their rifles have actually misfired resulting in personal injury or causing property damage. Instead, in stating a claim for damages, Plaintiffs allege their rifles 'manifest the defect' because this design defect is present in all the guns with the 'Walker' system." *Brooks v. Remington Arms Co., Inc.*, No. 1:09-CV-01054, 2010 WL 6971894, at *1 (W.D. Ark. Oct. 27, 2010) *report and recommendation adopted sub nom. Rodgers v. Remington Arms Co., Inc.*, No. 09-CV-1054, 2011 WL 2746150 (W.D. Ark. July 12, 2011). Here, Plaintiff's claims are exactly opposite because he alleged that his Model 700 Rifle has fired three times without a trigger pull. CAC ¶ 10.

In *Kinzer*, the court dismissed the plaintiffs' implied warranty claims for lack of privity under Connecticut and North Carolina law. MTD, Ex. B, at 15. Later, the court granted summary judgment because the plaintiffs failed to establish a genuine factual issue regarding reliance on an express warranty. MTD, Ex. B, at 20. Here, Defendants do not argue that the warranty claims fail for lack of privity under Missouri law, and Plaintiff adequately alleges reliance on Defendants' express warranties. *See e.g.*, CAC ¶ 130. Also, unlike the *McCormick*, *Rodgers*, and *Kinzer* plaintiffs who brought only warranty claims, Plaintiff here asserts additional claims for violation of Mo. Ann. Stat. § 407.010 *et seq.*, ("MMPA"), strict products liability, negligence, violation of the Magnuson-Moss Warranty Act ("MMWA"), fraudulent concealment, unjust enrichment and seek damages and declaratory relief. *Compare* MTD, Exs. A & B, at 1 *and* 2010

3

WL 6971894, at *3 *with* CAC ¶ 1. Thus, the claims in the CAC drastically differ from the claims in the *McCormick*, *Rodgers*, and *Kinzer* complaints, and Defendants characterization that these cases are similar is false and should be disregarded.

## II. Factual Background

Defendants' dubious claim that the CAC is "baseless," MTD at 1, likewise should be disregarded. In fact, the allegations in the CAC are well-supported by the troublesome history of the Model 700 Rifles, the harmful – sometimes deadly – consequences of their use, as well as Defendants' continuing denial or failure to acknowledge the defects. These critical facts have been kept from public view by the Defendants' pattern of concealing the defects through discovery abuse and by procuring confidential settlements with the victims or their families. The Eighth Circuit's *Lewy* decision is one of the few opinions to shed light on the extent of the defects in the Rifles and Remington's misconduct. *Lewy v. Remington Arms, Co., Inc.*, 836 F.2d 1104 (8th Cir. 1988). In affirming the jury's verdict, the *Lewy* court recounted the evidence against Remington including:

> [C]omplaints from customers and gunsmiths that the Model 700 would fire upon release of safety, some of these complaints dating back as far as the early 1970s; . . . Remington created a Product Safety Subcommittee to evaluate M700 complaints and on two occasions decided against recalling the M700; and Remington responded to every customer complaint with a form letter that stated that they were unable to duplicate the problem, that the customer must have inadvertently pulled the trigger and that Remington could not [be responsible].

*Id.* at 1106-07. The Eighth Circuit noted that "Remington's Product Safety Subcommittee concluded that of approximately two million M700s held by the public about 20,000 of them may have a potential defect." *Id.* at 1107. Based on that body of evidence, the Eighth Circuit concluded that a jury reasonably could have found that Defendants, "rather than suffer the expense of a recall, [to] take their chances that the 20,000 potentially dangerous M700 rifles held

4

by the public will not cause an accident." *Id.*[3] This evidence, the court noted, "would certainly establish that Remington acted with conscious disregard for the safety of others." *Id.*

The Model 700 Rifles are defective and the *Lewy* court made clear that there is ample evidence to support a verdict against Defendants for their explicit desire for profits over public safety. Defendants are aware of the underlying facts that are the subject of this litigation as they have litigated these issues for over 30 years and much of the CAC's allegations are taken directly from Remington's own documents. Simply stated, Model 700 Rifles are defective, Defendants have known of the defects for decades, but they have allowed these Rifles to remain in the hands of unsuspecting gun owners.

### III. Legal Standard for Motion to Dismiss

Defendants request this Court to impose a markedly more stringent pleading standard upon the CAC than what is required under the Federal Rules – essentially requiring Plaintiff to prove, at the pleading stage without the benefit of discovery, each and every element of his claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007) ("we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation.") (quotations omitted). Rather, a complaint attacked by a Rule 12(b)(6) motion to dismiss merely must state "enough facts to state a claim to relief that is plausible on its face." *Gomes v. Am. Century Companies, Inc.*, No. 12-1639, 2013 WL 1235238 (8th Cir. Mar. 28, 2013) (quoting *Twombly*, 550 U.S. at 570). That is, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). Under this standard, the task of a court is "to review the

---

[3] As alleged in the CAC, 20,000 defective rifles is the number of rifles Remington admits are the minimum that are defective, but the additional evidence and allegations in the CAC suggest a much higher figure.

plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n.4 (8th Cir.2010) (citing *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible")). "This is a context-specific task that requires [the] court to draw on its judicial experience and common sense." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The CAC satisfies the federal pleading standards described in *Twombly* and *Iqbal*, and withstands Defendants' other attacks. Specifically: (1) Plaintiff's strict liability and negligence claims are not barred by the economic-loss doctrine; (2) Plaintiff's negligence claim does not fail under Missouri law; (3) Plaintiff's claim under the Missouri Merchandising Practices Act ("MMPA") is adequately pled; (4) Plaintiff's fraud claim is are pled with sufficient particularity; (5) Plaintiff's express and implied warranty claims are not barred by the statute of limitations, and his express warranty claim is sufficiently pled; (6) Plaintiff's claim under the Magnuson-Moss Warranty Act ("MMWA") is properly pled because his state-law warranty claims are sufficiently pled; (7) Plaintiff's unjust enrichment claim is not barred; and (8) Plaintiff's declaratory judgment claim is a proper alternative count and adequate alleges circumstances that would support declaratory relief. Thus, Defendants' MTD should be denied in all respects because the CAC sufficiently provides "fair notice of what the . . . claim is and the grounds upon which it rests." *Iqbal*, 556 U.S. 662, 698-99 (quoting *Twombly*, 550 U.S., at 555).

## IV.    Argument

### A.    The Economic Loss Rule Does Not Bar Plaintiff's Strict Liability and Negligence Counts

Missouri allows "recovery in tort for pure economic damages [in] cases where there has been 'personal injury, or property damage either to property other than the property sold, or to the property sold when it was rendered useless by some violent occurrence.'" *Clevenger and*

*Wright Co. v. A.O. Smith Harvestore*, 625 S.W.2d 906, 908 (Mo. Ct. App. 1981) (quoting *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. 1978)). The Missouri Court of Appeals has stated purely economic losses may also be recovered in tort when the product was imminently dangerous when sold. *Gibson v. Reliable Chevrolet, Inc.*, 608 S.W.2d 471, 474 (Mo. Ct. App. 1980) (finding plaintiff could not recover purely economic losses to the product sold because "plaintiff's pecuniary loss did not result from a violent occurrence **or from a product which was imminently dangerous when sold**") (emphasis added).

Here, the CAC alleges that Model 700 Rifles fire without the trigger being pulled. Taken as true these allegations unquestionably establish that Model 700 Rifles are products that were imminently dangerous when sold. Additionally, the CAC alleges that many Rifles become useless by a violent occurrence. The Rifles suddenly, unexpectedly, and violently discharge without having the trigger pulled. Accordingly, the Plaintiff's strict liability and negligence claims are not barred by the economic loss rule and the MTD should be denied in this respect.

**B.      Plaintiff's Negligence Claims Do Not Fail For Any Additional Reasons**

Defendants misconstrue Plaintiff's negligence claims by alleging that the claims fail to the extent they are based upon a duty to recall. Contrary to Defendants' assertion, Plaintiff does not allege Defendants had a duty to recall. Rather, Plaintiff alleges that Defendants "had a duty to Plaintiff and the Class *to exercise reasonable and ordinary care in the formation, testing, design, manufacture, and marketing of the Product.*" CAC ¶ 104 (emphasis added). Plaintiff alleges that one way in which Defendants breached that duty of care was "by failing to promptly remove the Product from the marketplace or to take other appropriate remedial action." CAC 105. Thus, whether Defendants were negligent does not hinge (even in part) a common-law duty to recall. As a result, the Court should deny Defendants' MTD on this ground.

Even if the Court accepts Defendants' construction of Plaintiff's allegations, Plaintiff's negligence claims are broader than a duty to recall. As Defendants concede, dismissal of Plaintiff's duty to recall allegations does not support a dismissal of Plaintiff's entire negligence claim. Plaintiff also alleges that Defendants breached their duty of care "by designing, manufacturing, advertising and selling to Plaintiff and the Class a product that is defective and has the propensity to fire without a trigger pull." CAC ¶ 105. Accordingly, Plaintiff's negligence claims survive even if the Court dismissed claims based on a purported duty to recall.

## C.    Plaintiff Adequately Pleads MMPA Claims

In some situations courts have declined to apply the heightened standard of 9(b) to MMPA claims. *See, e.g.*, *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777 (Mo. Ct. App. 2008). ("A claim alleging violations of the [MMPA] does not necessarily need to be stated with the same particularity as a claim of common law fraud or mistake.").[4] Regardless, a pleading that sets forth a description of the circumstances and alleges that the defendant engaged in unlawful practices as defined in the MMPA is sufficient; it is not necessary to allege the elements of common law fraud. *Id.* at 778. Here, the CAC does just that. *See* CAC ¶¶ 68-90.

Further, this Court need not decide whether 9(b) applies to all MMPA claims, including those that are based on fraud, because even under the heightened standard, Plaintiff pleads the MMPA claim with sufficient particularity as required under 9(b). "After a claim adheres to the pleadings standards of Federal Rule of Civil Procedure 9(b), Plaintiffs are not additionally required to re-state the individual factual allegations necessary for a fraud claim each time fraud is an element of an additional claim; that Plaintiffs' separate count incorporates the necessary factual allegations for fraud is sufficient." *Govreau v. Albers*, 2:10-CV-4135-NKL, 2010 WL

---

[4] Plaintiff acknowledges that while reviewing claims under the MMPA, a number of district court decisions have applied the heightened standard under 9(b).

4817143 *5 (W.D. Mo. Nov. 22, 2010).[5] As such, Plaintiff incorporates Part IV.D., showing that Plaintiff sufficiently pleads fraud under Rule 9(b) and fraudulent concealment under Rule 8(a).[6]

## D. Plaintiff Sufficiently Pleads Common Law Fraud

### 1. Plaintiff Sufficiently Pleads Fraud Under Rule 9(b).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. *See Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). Put another way, the complaint must identify the "who, what, where, when, and how" of the alleged fraud. *United States ex rel. Costner v. URS Consultants, Inc.,* 317 F.3d 883, 888 (8th Cir. 2003) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)). Rule 9(b) should be read "in harmony with the principles of notice pleading." *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir.

---

[5] *See also, e.g.*, *Toben v. Bridgestone Retail Operations, LLC*, 4:11-CV-1834, 2012 WL 3548055, at *2 (E.D. Mo. Aug. 16, 2012) (finding plaintiffs allegations that defendant charged her a fee not relied to services or supplies, but disguised it as a legitimate fee for supplies satisfied the pleading requirement of 9(b)); *Stephens v. Arctic Cat, Inc.*, 4:09-CV-2131 AGF, 2012 WL 628867*4 (E.D. Mo. Feb. 27, 2012) (finding that Plaintiff has pled the contents of the statements and omissions that form the gravamen of his MMPA claim thereby satisfying the requirement of 9(b)); *Rucker v. U.S. Fidelis, Inc.*, 4:09-CV-670, 2009 WL 2390580 *1 (E.D. Mo. July 31, 2009) (finding that the "amended complaint includes sufficient factual information to provide the grounds on which the claims rest and raise the right to relief above a speculative level" under 9(b)).

[6] Defendants, at MTD at 7 n.4, attempt to cast doubt on Plaintiff's claims based on Remington's replacement of the Walker Fire Control with a new X-Mark Pro Fire Control, admittedly at a cost to Plaintiff Pollard. Notably, Defendant cites no case law in support of its claim that this somehow impacts Pollard or the class' claims.

2002) (emphasis added). "In assessing whether a party has met the heightened pleading standards, the district court must consider all of the facts taken as a whole." *Little Gem Life Sciences, LLC v. Orphan Med., Inc.*, 537 F.3d 913, 917 (8th Cir. 2008).

To recover for fraudulent concealment, plaintiff must establish that defendant had a legal duty to disclose the subject information, which it then failed to disclose. *See Kansas City Downtown Minority Dev. Corp. v. Corrigan Associates, Ltd. Partnership*, 868 S.W.2d 210, 219 (Mo. Ct. App. 1994). Moreover, "[a] duty to disclose only arises where there is an inequality of the positions of the parties; . . . or one of the parties possesses superior knowledge not within the fair and reasonable reach of the other party." *Id.*

Here, Plaintiff adequately pleads fraud with particularity consistent with Rules 9(b) and 8(a). Plaintiff alleges that the Defendants are in a "position of superiority to Plaintiff and the class members." CAC ¶142. Significantly, the detailed and particular allegations of the defect in the Model 700 Rifles, described in Paragraphs 23-28 of the CAC, adequately allege that Defendants had knowledge of the defects in the Model 700 Rifles. Throughout the CAC, Plaintiff alleges the "who", "what", "when" "where" and "how" of the misrepresentations or suppressions of the truth, and alleges specific individuals who made misrepresentations or suppressions of the truth about the defects in the Model 700 Rifles. A few examples from the CAC include:

- Mike Walker (the Remington engineer who designed the Walker Fire Control trigger for the Model 700 Rifle) in his "internal company memos" indicated the concerns about the safety of the trigger system. CAC ¶ 51.
- Robert Haskin (Remington's former general counsel and vice-president of marketing) testified a "new product was only worth doing if we could achieve certain goals, one of which was that it costs the same or less" (discussing that "redesign of the Walker Fire Control would take a back seat to profit"). CAC ¶ 42.
- Remington published statements to the public that the "Model 700, including its trigger mechanism, has been free of any defect since it was first produced…" CAC ¶ 54.

- In response to the thousands of customer complaints the defects in the Model 700 Rifles, Remington's consistent and unequivocally state that they were "unable to duplicate" the unintended discharge, or that the malfunction was a result of improper maintenance, adjustment or abuse of the rifle. *See* CAC ¶¶ 48-49.

Plaintiff also alleges facts taken directly from specific internal Remington documents including the specific dates of the documents that show misrepresentation or suppression of the truth about the defect in the Model 700 Rifles. A few examples include:

- A 1980 Firearms Research Division programs schedule lists as a "necessity" "fire control improvement" because it was "necessary to reduce product liability. CAC ¶ 39.
- Remington's Fire Control Business Contract of January 27, 1995 provided: The goal is to provide a fire control that "feels" the same to our customers yet provides additional safeguards against inadvertent or negligent discharges. CAC ¶ 41.
- Remington's internal documents admitting that "a common source of accidents with firearms is accidental discharge" and that "a safety is provided to prevent accidental discharge." CAC ¶ 48.[7]

The CAC is replete with allegations that adequately allege that the Defendants' conduct constitutes a suppression of a material fact and that (as further explained in Part IV.D.3) Plaintiff was unable to discover the alleged fraud. Specifically, the CAC alleges that the Model 700 Rifles discharge unexpectedly without a trigger pull. In fact, the CAC details the numerous public statements and responses to consumer returns of defective Rifles wherein Remington consistently and repeatedly denies the existence of any defect in the Model 700 Rifles. *See, e.g.*, CAC ¶¶ 48-49, 52-56. Moreover, the CAC alleges that Defendants falsely claim the Model 700 Rifles are "fully warranted against defects in workmanship," which is a material fact to Plaintiff and the Class **before** and **after** Plaintiff purchased the Model 700 Rifles and experienced accidental discharges. CAC ¶122. Despite these numerous, specific allegations supporting Plaintiff's fraud claims, consistent with Rules 9(b) and 8(a), Defendants disingenuously claim that they "simply have no meaningful way to formulate a response to . . . such vague allegations

---

[7] Indeed, Defendants representation, to Plaintiff and the proposed Class, that a "safety" is in fact a "safety", is a specific misrepresentation because the safety essentially functions as a trigger. *See* CAC ¶¶ 37, 48 (discussing that a safety is provided to prevent accidental discharge).

of fraud," MTD at 8. As alleged in the CAC, and confirmed by Remington's own documents as well as court decisions confirming jury verdicts against them, Defendants have been aware of the defects in the Model 700 Rifles for years – yet continue to deny the problems to this day.

Further, Defendants argue that the CAC insufficiently identifies which Defendant made the alleged misrepresentations because the CAC often refers to Defendants as "the Defendants." However, because Defendants are so intertwined contractually for each others' liabilities, they essentially are one entity with regard to the allegations contained in the CAC. *See* CAC ¶¶ 14-20. By the terms of their Asset/Sale Purchase Agreement, Remington and/or DuPont expressly and impliedly agreed to assume all of SGPI's liabilities, including product and warranty liabilities, as well as the liabilities under the continuing relationship between Remington, DuPont, and SGPI. CAC ¶ 18-19. Moreover, Remington, DuPont, and SGPI acted fraudulently with respect to this Agreement because its purpose was to avoid or limit the responsibility of DuPont and Remington for the civil liability of SGPI. CAC ¶ 20-21. Consequently, DuPont and Remington are liable for the claims in this lawsuit either directly or as corporate successors to SPGI's civil liability. *Id.* In addition, at all times relevant here, SGPI and Remington were agents of DuPont acting in the course and scope of their agency relationship thereby making DuPont liable for all of their acts and omissions, either by exercising direct control over SGPI and Remington, or by adopting and ratifying their acts or omissions. CAC ¶ 21-23. Plaintiff alleges that each of the Defendants acted as alter egos or otherwise are liable for the misconduct of Defendant Remington, and thus the use of "the Defendants" generally is entirely appropriate and accurate here.

Further, the CAC specifically articulates the defects of the Model 700 Rifles and the specific acts of fraud that support *all* of Plaintiffs' claims for relief. That is, the underlying facts Plaintiff alleges are material to each count in the CAC. Thus, the CAC alleges fraud with

sufficient particularity under Rule 9(b) and Defendants' claims to the contrary should be disregarded (and the MTD denied) in this respect.

### 2. Plaintiff Adequately Alleges Reliance.

Defendants incorrectly argue that Plaintiff has failed to provide allegations that Plaintiff relied on any of the Defendants' misrepresentations. To establish a claim for fraudulent concealment, a plaintiff must show the hearer's reliance on the representation as true. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007). Contrary to the Defendants' assertion, Plaintiff has pled specific fraudulent representations that mislead Plaintiff. Defendants fraudulently represented to the Plaintiff that his Rifle was fit for the purpose for which he bought it and was free of defects in materials and workmanship. *See* CAC ¶ 3. Defendants made affirmative representations regarding the reliability, safety, and trusted nature of Model 700 Rifles to Plaintiff, the class and general public prior their date of purchase. CAC ¶ 142. Plaintiff relied on these representations and relied on Defendants to disclose the defective nature of the Model 700 Rifle and alleges these representations were material to his purchase decision. *See* CAC ¶¶ 142, 145. The material facts concealed or not disclosed by Defendants to Plaintiff would have directly impacted Plaintiff's decision whether or not to purchase the Model 700 Rifle. CAC ¶ 143. Had Plaintiff known of the defective nature of the Model 700 Rifle, Plaintiff would have negotiated a lower price to reflect the risk or would have avoided the risk all together by purchasing a different rifle. *See* CAC ¶¶ 142, 145. Thus, Plaintiff has adequately alleged a claim for common-law fraud.

### 2. Defendants' History of Concealing the Defects in the Rifles Adequately Alleges Plaintiff's Inability to Discover the Fraud

Plaintiff's CAC makes clear that despite decades of knowledge of the dangerous defects of the Model 700 Rifles, Defendants never told their customers. Defendants never issued a warning to its customers. Defendants never issued a recall of the Rifles and, in fact, continue to

falsely represent to the public that the Rifles are safe and reliable. CAC ¶ 5. Despite this factual

posture, Defendants argue that the Plaintiffs have made just one conclusory allegation that

Plaintiff and the Class could not have discovered the defect. The CAC demonstrates otherwise.

Plaintiffs pleaded extensive and detailed allegations throughout the CAC – in many

instances with citations to Remington's own internal documents – containing the representations

that support the allegation that "Plaintiff and the Class, acting as reasonably prudent people,

could not have discovered that Defendant's product was defective as herein mentioned or

perceive its danger." *See* CAC ¶ 28-29, 35, 37-38, 43-45, 47-48, 53-54, 56-57, 67-68.

First, Remington has taken an unwavering public stance denying the defects of the Model

700 Rifles in both public statements and in responses to each of its customers who have returned

the Rifles for repair. Among the various examples of this stance in the CAC, Remington's

response to the 2010 CNBC documentary epitomizes its long-embraced mantra:

- Recently CNBC produced an "expose" claiming that the trigger mechanism of the Model 700 rifle has a deadly design flaw. This claim is demonstrably false.
- Both Remington and experts hired by plaintiff attorneys have conducted testing on guns returned from the field, which were alleged to have fired without a trigger pull, and neither has ever been able to duplicate such an event on guns which had been properly maintained and which had not been altered after sale.
- Each of the tragic and emotional personal injury and death cases cited by CNBC involve a breach of one or more important gun safety rules . . . .
- The Barber rifle had been modified in multiple ways and poorly maintained (rusted action). Even so, in testing by experts for both Remington and the Barber family, the Barber rifle would fire only by pulling the trigger while the safety was in the fire position.
- The truth about accidental discharges is clear. These things don't go off by themselves.
- The Model 700, including its trigger mechanism, has been free of any defect since it was first produced and, despite any careless reporting to the contrary, the gun's use by millions of Americans has proven it to be a safe, trusted and reliable rifle.
- **No scientific test has ever supported the accidental discharge theory of plaintiffs' lawyers and their expert** . . . .

CAC ¶ 56 (citations omitted). These allegations exemplify Remington's intentional, continuing

concealment of the Model 700 Rifles' defects, and, along with the similar allegations in the

CAC, sufficiently demonstrate Plaintiff's inability to discover the fraud. Further, *Hess v. Chase Manhattan Bank, USA, N.A.*, a case cited by Defendants, states that whether an "investigation was reasonable is by its nature normally a . . . a jury question." *Hartman*, 220 S.W.3d 758, 766 (Mo. 2007).

Also, examination of past court opinions provides a well-documented history of Remington's unequivocal denial of the defects in the Model 700 Rifles despite overwhelming evidence establishing their existence, and of Remington's discovery abuse to conceal internal documents confirming its knowledge of the defects. For example, in *Hull v. Remington Arms Co., Inc.*, CV-10-05010-RBL, 2011 WL 338803 (W.D. Wash. Feb. 3, 2011), Remington admitted "that since 2002, it has not sought to save, document or otherwise preserve evidence of up to 200 incidents where its brand new rifles fired absent a trigger pull, during end-of-manufacturing test firing in the 'gallery.'" *Id.* at *1. The court declined to impose sanctions on Remington, but, due to its failure to preserve this relevant evidence, held that "Remington will not be permitted to claim that they have never had an FSR, FBO or FBC incident, or that they documented or tested the offending units after they failed in the gallery." *Id.* at *3.

Several courts have ordered Remington to produce wrongfully-withheld discovery related to its research into a "replacement for the Model 700," which Remington refers to as its "New Bolt Action Rifle" or "NBAR" program. *See Chapa v. Garcia*, 848 S.W.2d 667, 669 (Tex. 1992); *Hartman v. Remington Arms Co., Inc.*, 143 F.R.D. 673, 675 (W.D. Mo. 1992).[8] In *Chapa*, Justice Doggett noted in his concurring opinion that many of the NBAR documents:

---

[8] *See also Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 173 (Tex. 1993) (Doggett, J., dissenting) (quoting the trial court judge's findings that "Remington's conduct throughout this proceeding has been flagrant bad faith and its counsel has engaged in a callous abuse of the discovery process;" "Remington's counsel B. Lee Ware acted in bad faith during the discovery process and has engaged in a callous abuse of the discovery process;" "The bad faith conduct of Remington and its counsel in the conduct of the discovery process and the trial of this cause

> [P]rovide evidence of great significance, perhaps the only evidence, as to Remington's knowledge of defects and of its ability to implement safer, alternative designs. These materials suggest that Remington's on-going research concerns were precisely those that are at issue in this litigation – whether it knew of problems with the safety in the Model 700 and whether improvement was feasible. Included among them are research reports and memoranda showing that new safety assemblies and fire controls had been tested in the Model 700 on several occasions [and] recommending improvements to the safety in the Model 700, including multiple blocking of the sear and trigger; competitive review of competing rifles' fire controls and safeties; and documents reflecting significant concerns regarding the Model 700 by Remington personnel.

*Chapa,* 848 S.W.2d at 672-73. Similarly, the *Hartman* court found that "the evidence also provides the only source of admissions and information on defendant's knowledge of alleged Model 700 defects, testing done on Model 700 and alternative components." 143 F.R.D. at 676. Both courts ordered production of many NBAR documents over Remington's protestations.

Despite these courts' confirmation that Defendants have had knowledge of the defects in the Model 700 Rifles for decades, and Remington's internal documents acknowledging the defects, including an admission that from 1992 to 2004, it received 3,273 customer complaints about Model 700 Rifles firing without a trigger pull, to this day Defendants have failed to acknowledge the defects publicly – much less warn millions of consumers they have knowingly put in harm's way. Instead, Defendants have published several written denials, some of which are publicly available today at http://remington700.tv, which continue to deny the existence of the defects in the Model 700 Rifles. CAC ¶ 56. Specifically, Remington continues to shirk all responsibility, hiding behind veiled statements such as: "The Model 700, including its trigger mechanism, has been free of any defect since it was first produced, and . . . the gun's use by millions of Americans has proven it to be a safe, trusted and reliable rifle," and boldly

---

resulted in denial of a just, fair, equitable and impartial adjudication of the rights of the litigants;" and "Remington's conduct and the conduct of its counsel B. Lee Ware throughout this proceeding in the hindrance of the discovery process justified a presumption that its claims and defenses lack merit.").

proclaiming that "[n]o scientific test has ever supported the accidental discharge theory of plaintiffs' lawyers and their expert." *Id.*

Thus, Defendants have gone to great lengths throughout the troubling history of the Model 700 Rifles to conceal their defects – even going so far as to commit discovery abuse – and continue to deny all knowledge of the defects to this day. Against this backdrop, Plaintiffs have adequately pled their inability to discover the alleged fraud.

**E.      Plaintiff's Warranty Claims (Counts I and VI) Must Not Be Dismissed**

**1.   Plaintiff's Warranty Claims Are Not Barred by the Statute of Limitations**

Defendants are estopped from pleading the statute of limitations as an affirmative defense.  In Missouri, tolling due to fraudulent concealment is recognized by statute and case law.  Mo. Rev. Stat. § 516.280; *Tilley v. Franklin Life Ins. Co.*, 957 S.W.2d 349, 351 (Mo. Ct. App. 1997) (holding that if a party takes affirmative action to conceal a fraud, the statute of limitations is tolled until the fraud is discovered). Missouri case law makes it clear that once a plaintiff has sufficiently pled a fraudulent concealment, the factual nature of the concealment and plaintiff's knowledge makes the matter nearly impossible to deal with in a motion to dismiss or motion for summary judgment. *Johnson v. Berry*, 171 F. Supp. 2d 985, 990 (E.D. Mo. 2011). With respect to the warranty provisions under the uniform commercial code, Missouri statute 400.2-725(4) makes it clear that "[t]his section does not alter the law on tolling of the statute of limitations."

Additionally, Missouri courts have long acknowledged the defense of equitable estoppel to defeat the operation of a statute of limitations. The principle that if a defendant takes affirmative steps to prevent the plaintiff from asserting his rights, then the defendant cannot benefit from its conduct by using the shield of the statute of limitations. The doctrine has been described as follows: "The purpose of the doctrine of equitable estoppels is to prevent a party

from taking inequitable advantage of a situation he or she has caused." *McCrary v. Truman Med. Ctr.*, 916 S.W.2d 831, 833 (Mo. Ct. App. 1995).

As set forth in Part IV.D.3 above, Remington has taken an unwavering stance denying the defects of the Model 700 Rifles in both public statements and in responses to each of its customers who have returned the Rifles for repair. Again, Plaintiff has pled extensive and detailed allegations throughout the CAC supporting their estoppel and tolling allegations and satisfying the particularity requirements of Rule 9(b). *See also,* CAC ¶ 67, 68, 99, 141-147.

Even if Defendants were not estopped from pleading a statute of limitations defense, the CAC sufficiently alleges facts negating the applicability of the limitations period. Under Mo. Rev. Stat. § 516.120, warranty claims are subject to a five-year statute of limitations period. Plaintiff had a series of misfires starting in 2010 and the CAC was filed on January 28, 2013. Plaintiff's claims are not barred because his cause of action did not accrue until at the very earliest in 2010. CAC ¶ 10; MTD at 7, n.4. Also, due to Defendants continual breaches, under Missouri law a cause of action shall not be deemed to accrue until the last item of damage occurs, "so that all resulting damage may be recovered, and full and complete relief obtained." Mo. Rev. Stat. § 516.100. Thus, because Plaintiff's last misfire occurred in November 2010, his claim was timely.

Additionally, based on Defendants' prior strategy in defending misfire cases, Defendants will use a safe gun handling defense to argue that Plaintiff is at fault. CAC ¶ 38. By that logic, if Plaintiff believed, as Defendants claimed, that he was at fault, then he could have had no knowledge of any alleged defect, and the cause of action could not have accrued until shortly before filing the CAC. However that issue is a factual issue that must be developed through

discovery and dismissal under 12(b)(6) cannot be granted on the statute of limitations.[9] In short, Defendants' arguments that Plaintiff's claims are time barred should be denied.

### 2. Plaintiff's Warranty Claims Are Broader than the Written Warranty Issued at the Time of Purchase.

Defendants improperly attempt to limit Plaintiff's breach of warranty claim to the two-year warranty issued to Plaintiff at the time of purchase. However, Plaintiff's warranty claims go beyond the two-year warranty issued at the time of purchase. An express warranty is created by any "affirmation of fact or promise made by the seller to the buyer which related to the goods and becomes part of the basis of the bargain . . . that the goods shall conform to the affirmation or promise." Mo. Rev. Stat. § 400.2-313.1(a).

Plaintiff has adequately alleged numerous affirmations of fact and promises, which go beyond the two-year warranty, made by Defendant to the Plaintiff regarding the Model 700 Rifles that became part of the basis of the bargain. Defendants advertised to Plaintiff that the Model 700 Rifles were fit for their ordinary purpose and were free of defects in material and workmanship. *See* CAC ¶ 3. Further, Defendants made affirmative representations regarding the reliability, safety and trusted nature of Model 700 Rifles to Plaintiff. CAC ¶ 5. These representations became part of the basis of the bargain, and thus created an express warranty. *See* CAC ¶ 143. Plaintiff has alleged that Defendant breached the warranty. *See* CAC ¶¶ 123-24, 129. As such, Plaintiff has properly alleged a breach of express warranty claim.

### 3. Plaintiff Alleges Reliance on the Express Warranty

To state a claim for breach of warranty, a Plaintiff must allege that "the statement of fact was a material factor inducing the buyer to purchase the goods." Here, Plaintiff adequately

---

[9] "An affirmative defense, based on a statute of limitations that requires a factual inquiry is not amenable to resolution on a motion to dismiss." *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 971 (E.D. Mo. 2010) (internal citation omitted).

pleads that the statements of fact were material factors in his purchase. Defendants advertised to Plaintiff that the Model 700 Rifles were fit for the ordinary purpose and were free from defects in material and workmanship. CAC ¶ 3. Further, Defendants made affirmative representations regarding the reliability, safety, and trusted nature of the Rifles to Plaintiff. CAC ¶ 5. Plaintiff adequately alleges he relied on these representations and relied on Defendants to disclose the defective nature of the Rifles because he alleges that these representations were material to his purchase decision. CAC ¶ 142, 145. Thus, Plaintiff's claim for breach of express warranty should not be dismissed.

**F.    Plaintiff Adequately Pleads His MMWA Claims**

Plaintiff's MMWA claims do not fail because (as described above) Plaintiff has adequately stated his claims under Missouri warranty law, and because he adequately states independent claims under the MMWA. "The MMWA grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law." *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009) (citing 15 U.S.C. § 2310(d)). Thus, where a plaintiff adequately alleges a breach of warranty under the applicable state law, those allegations also suffice to state a claim under the MMWA. *See id.* Here, Plaintiff adequately states his warranty claims on his own behalf and on behalf of the proposed Class, and thus Defendants' argument that the MMWA claims should be dismissed should be rejected.

Additionally, Plaintiff adequately alleges that the Defendants have failed to comply with the MMWA. In addition to providing derivative claims under the applicable state warranty law, the MMWA provides a cause of action to consumers claiming damages as a result of the failure of a warrantor to comply with any obligation under the MMWA – beyond merely its obligations under its own written or implied warranties and beyond the scope of state warranty law. *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 791 n.9, 794 (8th Cir. 2009); *see* 15 U.S.C. §§

2303, 2304; *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 780-81 (7th Cir. 2011).[10] In addition to "allow[ing] consumers to enforce limited written and implied warranties in federal court [by] borrowing state law causes of action," the MMWA "imposes minimum federal warranty standards for full warranties and provides remedies for their breach." *Anderson*, 662 F.3d at 781. Under the MMWA, a manufacturer who offers a written warranty "must as a minimum remedy such consumer product within a reasonable time and without charge," § 2304(a)(1), and "may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product." § 2304(d).

Here, Plaintiff brings MMWA claims both as derivative claims of the state-law warranty claims and independently under the MMWA. *See* CAC ¶¶ 127-138. Specifically, Plaintiff alleges that Defendants have breached their written warranty that "your Remington firearm will be free from defect in material and workmanship." CAC ¶ 133. That written warranty further requires that "[i]n the event a defect is found the purchaser must return the gun to the factory or an authorized warranty repair center **at their own cost**. Defendants then have **the option** to repair the defect(s) or replace the firearm at no cost to you." *Id.* Defendants written warranty both assesses costs in connection with the remedy and does not offer to remedy the defect without charge (merely gives a possibility of a cost-free remedy), and thus violates the minimum standards of the MMWA. As such, Plaintiff adequately states independent claims under the MMWA and states cognizable claims under Missouri warranty law, and Defendants MTD with respect to Plaintiff's MMWA claims should be denied.

### G.     Plaintiff Alleges Cognizable Unjust Enrichment Claims

---

[10]  *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062 (5th Cir. 1984); *In re Apple iPhone 3G Products Liab. Litig.*, 859 F. Supp. 2d 1084, 1089 (N.D. Cal. 2012).

In Missouri, to state a claim for unjust enrichment, a plaintiff must allege that: (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant retained the benefit under unjust or inequitable circumstances. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). Here, Plaintiff's factual allegations are sufficient to state unjust enrichment claims to survive a Rule 12(b)(6) motion to dismiss. Plaintiff alleged that substantial benefits have been conferred on Defendant by him and the Class and that Defendants have appreciated these benefits. CAC ¶ 149. Defendants designed, manufactured, distributed, sold and placed the Model 700 Rifles into the stream of commerce knowing and expecting that they would be used by consumers and other members of the general public. CAC ¶ 32. More specifically, Defendants have made hundreds of millions of dollars over the last six decades through the sales of Model 700 Rifles, and received a benefit when Plaintiff purchased his Rifle. CAC ¶¶ 10, 31. Plaintiff also alleges that Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class. CAC ¶ 150.

Also, a complaint may seek contract or warranty remedies and alternatively recovery for unjust enrichment – "even though not specifically stated to be in the alternative." *Mays-Maune & Associates, Inc. v. Werner Bros., Inc.*, 139 S.W.3d 201, 206 (Mo. Ct. App. 2004).[11] Moreover, *Howard v Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010), cited in MTD at 12-13, does not suggest that an express contract always precludes a claim for unjust enrichment. *See Garrett v. Cassity*, No. 4:09-cv-01252, 2011 WL 3235633, at *9 n.13 (E.D. Mo. Jul. 28, 2011). Thus, taken in a light most favorable to Plaintiff, the Complaint states a cause of action against Defendants for unjust enrichment that is not subject to dismissal under a Rule 12(b)(6) motion.

---

[11] *Accord* Fed. R. Civ. P. 8(d)(2); *Ozark Purchasing LLC v. Falcon Steering Sys., Inc.*, 12-3415-CV-S-ODS, 2013 WL 708950, at *5 (W.D. Mo. Feb. 26, 2013); *Byrd v. BJC Health Sys.*, 4:11CV1571 HEA, 2013 WL 1581420, at *2 (E.D. Mo. Apr. 12, 2013).

## H.    Plaintiffs' Adequately States a Claim for Declaratory Relief

Defendants claim that "[b]efore a plaintiff is entitled to declaratory relief, the plaintiff must plead and prove that the plaintiff has no other adequate remedy," MTD at 13 (citing *City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181, 193 (Mo. Ct. App. 2004)), is a misstatement of the holding in *City of Sullivan*. In that case, the court held that because the jury had awarded damages on their legal claim (albeit less than the plaintiffs were seeking), an equitable remedy was not allowable because the plaintiffs "had an adequate remedy at law for any monetary damages resulting from the overcharges for electric service by City." *City of Sullivan*, 142 S.W.3d at 194.[12] *City of Sullivan* does not stand for the proposition that a plaintiff is required to "**plead** . . . that the plaintiff has no other adequate remedy," MTD at 13 (emphasis added), as Defendants claim, it merely does not allow a plaintiff to **recover** damages at law and be granted declaratory relief as well. The court noted that a "petition seeking declaratory relief may also seek additional relief, including damages, if properly stated in separate counts." *Id.*[13] Here, the CAC properly states separate counts for declaratory relief and for damages and thus this Court should not dismiss the declaratory relief count.

Plaintiff also adequately alleges sufficient facts to support his claims for declaratory relief and Defendant's motion therefore must be denied in this respect. In order to maintain a declaratory judgment action, a party must meet four requirements: (1) a real, substantial, presently existing controversy as to which specific relief is sought; (2) a legally protected interest directly at issue and subject to immediate or prospective consequential relief; (3) the question

---

[12] Similarly, *Graham v. Goodman*, 850 S.W.2d 351, 356 (Mo. 1993), upon which Defendants rely also found declaratory relief inappropriate where the plaintiff succeeded on damages claims. *Id.* at 356. Defendants also cite *Schierding v. Missouri Dental Bd.*, 705 S.W.2d 484, 486 (Mo. Ct. App. 1985), which determined that declaratory relief was not available to a plaintiff who had not yet exhausted his administrative remedies. That case is irrelevant to the present analysis.
[13] *See also* Fed. R. Civ. P. 8(d)(2); *accord Ozark Purchasing LLC*, 12-3415-CV-S-ODS, 2013 WL 708950, at *5.

presented is ripe for judicial determination; and (4) the plaintiff does not have an adequate remedy at law. *City of Sullivan*, 142 S.W.3d at 193-94. Plaintiffs' allegations present an actual continuing controversy that is ripe for a declaration by this Court. Here, Plaintiffs' allege that Defendants' "Model 700 Rifles are subject to unintended firing without a trigger pull . . . ." *Id.* ¶ 4. Plaintiffs allege that despite decades of knowledge of the defects, Defendants have failed to warn Plaintiffs and the proposed Class of the defects, recall the defective Rifles or offer to pay for a replacement trigger assembly. *Id.* ¶¶ 48-49, Plaintiffs further allege that Remington continues to misrepresent that the Rifles are safe in its responses to the thousands of customer complaints and numerous public statements over the past 60-plus years. *See id.* ¶¶ 48-50, 57. For their part, Defendants (as is apparent from both their motion and every public statement made in regard to the Model 700 Rifles) deny that any of the alleged defects exist in the design of the trigger assembly and likewise refuse to issue a recall of the Rifles. Due to Defendants' continuing denial of the alleged defects, Plaintiffs and the proposed Class are in possession of defective Rifles that they either must stop using altogether or pay for the replacement of the defective trigger assembly in order to ensure their safety. Also, proposed Class members who are unknowingly firing a defective Rifle are at grave risk of injuring themselves or others. Thus, there is a substantial likelihood[14] that Plaintiffs' and the proposed Class have and will continue to suffer harm (either by loss of use of their Rifle, expenses to repair the defects, or physical injury or death). Thus, a substantial controversy continues between the parties.

Plaintiff asserts legally protected interests under Missouri law. Specifically, Plaintiff asserts MMPA violations, strict products liability, negligence, violation of the MMWA, breach of express and implied warranties, fraudulent concealment, unjust enrichment. CAC ¶ 1. To the extent any of these interests are not adequately addressed by Plaintiff's damages counts,

---

[14] In fact it is a certainty.

declaratory relief would be appropriate here. Defendants claim that each of Plaintiff's legal claims should be dismissed, yet paradoxically claim that Plaintiff has adequate remedies available to him. However, if Defendants were successful in this motion – Plaintiff would then be able to prove that he has no adequate remedy at law and therefore entitled to declaratory relief. At this stage, because Plaintiff properly states his declaratory relief count as an alternative to the damages counts, it is premature to determine whether such legal remedy exists. As such, the declaratory relief count in the CAC should not be dismissed at the pleading stage under 12(b)(6) merely because Plaintiff also states a claim for damages.

## V.     Conclusion

The CAC adequately places Defendants on notice of Plaintiff's claims. Therefore Plaintiff respectfully requests this Court deny Defendants' MTD in all respects.[15]

**DATED:** April 25, 2013       By      s/ R. Seth Crompton
                                        R. Seth Crompton
                                        **HOLLAND, GROVES, SCHNELLER & STOLZE, LLC.**
                                        300 North Tucker Boulevard, Suite 801
                                        St. Louis, MO 63101
                                        Telephone: (314) 241-8111
                                        Facsimile: (314) 241-5554
                                        Email: scrompton@allfela.com

### CERTIFICATE OF SERVICE
I hereby certify that on April 25, 2013, I caused a copy of the foregoing document to be served upon all counsel of record via ECF Notice of Electronic Filing.

                                        /s/ R. Seth Crompton
                                        R. Seth Crompton
                                        **HOLLAND, GROVES, SCHNELLER &STOLZE, LLC.**
                                        300 North Tucker Boulevard, Suite 801
                                        St. Louis, MO 63101
                                        Telephone: (314) 241-8111
                                        Facsimile: (314) 241-5554
                                        Email: scrompton@allfela.com

---

[15] Alternatively, should this Court determine that the CAC be inadequately pleaded in any way, Plaintiff respectfully requests to be granted leave to amend the CAC.