IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

IAN POLLARD, )
)
        Plaintiff, )
)
vs. ) Case No. 13-0086-CV-W-ODS
)
REMINGTON ARMS COMPANY, )
LLC, et al., )
)
        Defendants. )

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS

Pending is Defendants' Motion to Dismiss (Doc. # 24). The Motion is granted in part and denied in part.

## I. BACKGROUND

On January 28, 2013, Plaintiff filed this putative class action suit against Remington Arms Company, Inc., Sporting Goods Properties, Inc., and E.I. DuPont Nemours and Company, after his Remington Model 700 rifle fired without a trigger pull. Plaintiff's nine-count Complaint asserts the following claims:

- Count I—Violation of the Missouri Merchandising Practices Act ("MMPA");
- Count II—Strict Products Liability (Design Defect, Manufacturing Defect, and Failure to Warn);
- Count III—Negligence;
- Count IV—Violation of the Magnuson-Moss Warranty Act ("MMWA");
- Count V—Breach of Express Warranty;
- Count VI—Breach of Implied Warranty of Merchantability;
- Count VII—Fraudulent Concealment;
- Count VIII—Unjust Enrichment; and

- Count IX—Declaratory Relief. Plaintiff seeks a declaration that all Remington Model 700 rifles using the Walker fire control are defective, that Defendants knew of the defect, and that Defendants should issue a recall of the Model 700 rifles.

Plaintiff alleges that the Walker Fire Control mechanism in Remington Model 700 rifles ("Model 700 rifles") allows debris and other foreign materials to slip between the trigger and the trigger connector making the rifles susceptible to accidental discharge without a trigger pull. Complaint, ¶¶ 4, 24-25. Plaintiff avers that the design defect in the Walker Fire Control trigger is common to all rifle models that employ the fire control, and that Defendants received thousands of complaints that the Remington Model 700 rifle containing the Walker Fire Control fired without a trigger pull. *Id.*, ¶¶ 4, 35. According to Plaintiff, Defendants knew of the dangerous conditions of the Model 700 rifle, but never issued a public warning or recalled the rifles and falsely represented to the public that the Model 700 was a trusted, safe, and reliable rifle, and was free from defects in materials and workmanship. *Id.*, ¶¶ 3, 5.

Plaintiff purchased his Model 700 rifle in 2000 and it fired without a trigger pull three times after 2010. *Id.*, ¶ 10. Plaintiff contends his Model 700 rifle is "valueless" and that he would not have purchased one if he had been aware of the alleged defect. *Id.*, ¶¶ 79, 94, 107, 145. He seeks damages based on the allegedly inadequate value he received when he purchased his rifle, including damages for replacement or repair of the fire control mechanism. *Id.*, ¶¶ 89, 107.

Plaintiff also seeks to certify a class consisting of "[a]ll individuals in the State of Missouri that [sic] own or have owned a Remington Model 700 Rifle originally manufactured and distributed with a Walker Fire Control Trigger Mechanism." *Id.*, ¶ 59. Plaintiff expressly excludes from the class "persons claiming personal injuries as a result of the defect in the Remington 700." *Id.*

II. STANDARD

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P.

8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

### III. DISCUSSION

#### A. Economic Loss Doctrine

First, Defendants move to dismiss Plaintiff's strict liability claim (Count II) and negligence claim (Count III) contending that they are barred by the economic-loss doctrine. "When applicable, the economic loss doctrine denies recovery for any loss that is purely economic." *Clayton Center Associates v. W.R. Grace & Co.*, 861 S.W.2d 686, 692 (Mo. Ct. App. 1993). Defendants rely on *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901 (Mo. banc. 1986). In *Sharp Bros.*, the

Missouri Supreme Court denied recovery "on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold." *Id.* at 903. This rule also applies in negligence actions. *See Clayton Center Associates v. W.R. Grace & Co.*, 861 S.W.2d 686, 692 (Mo. Ct. App. 1993); *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.*, 714 S.W.2d 919, 922 (Mo. App. 1986). In the *Sharp Bros.* cases, the defendant sold a crane, which counterweight broke and crushed the crane's cab. *Sharp Bros.*, 703 S.W.2d at 902. The only damage alleged was to the crane—there was no personal injury or other damage. *Id.* The economic loss doctrine precluded the plaintiff's claim for product liability or negligence. *Id.*, 714 S.W.2d at 922.

In this case, Plaintiff seeks damages based on the inadequate value he received when he purchased his Model 700 rifle, including the cost of replacing or repairing the allegedly valueless product. Complaint, ¶ 107. Plaintiff provides no factual allegations showing that he suffered personal injury or sustained damages to any property other than his rife. In fact, the class definition excludes "persons claiming personal injury as a result of the defect in the Remington 700." *Id.*, ¶ 59. Thus, the only loss sustained was to the product sold.

Plaintiff relies on *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. 1978) and its progeny and argues recovery in tort is permitted for purely economic losses so long as the product "was rendered useless by some violent occurrence" or "was imminently dangerous when sold." Suggestions in Opposition (Doc. # 38), at 6-7. Plaintiff argues that because his rifle was imminently dangerous when sold and rendered useless by a violent occurrence—firing without the trigger being pulled—the economic-loss doctrine does not bar his claims. However, this argument has been rejected by the Missouri Supreme Court. *See Sharp Bros. Contracting Co.*, 703 S.W.2d at 803 ("We . . . deny recovery on a theory of strict liability in tort . . . where the only damage is to the product sold. Dictum to the contrary in *Crowder v. Vandendeale* . . . should no longer be followed."). The Court concludes that the economic-loss doctrine bars Plaintiff from recovering under strict liability and negligence. Accordingly, Counts II and III are dismissed.[1]

---

[1] Defendant also argues that Plaintiff's negligence claim should be dismissed because Missouri does not recognize a duty to recall. Having already dismissed Count III on the

4

B. Rule 9 and Fraudulent Misrepresentation

Plaintiff's MMPA claim (Count I) makes references to fraudulent misrepresentations made by Defendants. Further, although entitled "Fraudulent Concealment," Count VII also makes references to alleged misrepresentations made by Defendants. Thus, in this section, the Court will analyze whether Plaintiff sufficiently pled a cause of action for fraudulent misrepresentation under Count I or Count VII.

The private right of action created by the MMPA requires proof of, among other things, an "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

Under Missouri common law, the elements of fraudulent misrepresentation are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to reply thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc. 2010).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud . . . shall be stated with particularity."[2] The Eighth Circuit has held that the requirements of Rule 9(b) must be interpreted

---

economic-loss doctrine, the Court declines to analyze whether the duty to recall is a viable remedy.

[2] The Court rejects Plaintiff's argument that Rule 9(b) does not always apply to MMPA claims. *See Khaliki v. Helzberg Diamond Shops, Inc.*, No. 4:11-CV-00010-NKL, 2011 WL 1326660, at *2 (W.D. Mo. April 6, 2011) ("Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims.").

5

> in harmony with the principles of notice pleading . . . . The special nature
> of fraud does not necessitate anything other than notice of the claim; it
> simply necessitates a higher degree of notice, enabling the defendant to
> respond specifically, at an early stage of the case, to potentially damaging
> allegations of immoral and criminal conduct. Thus, a plaintiff must
> specifically allege the circumstances constituting fraud, . . . including such
> matters as the time, place and contents of false representations, as well
> as the identity of the person making the misrepresentation and what was
> obtained or given up thereby.

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (quotations and citations omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

In this case, Plaintiff does not identify any representation made directly to him or the proposed class. Plaintiff points to several paragraphs in his Complaint that he contends sufficiently plead fraudulent misrepresentation under Rule 9(b).[3] For example, Plaintiff references a statement published by Remington that "Model 700, including its trigger mechanism, has been free of any defect since it was first produced . . ." Complaint, ¶ 54. Plaintiff also alleges that in response to customer complaints regarding the rifle defects, "Defendants consistently claim that they were 'unable to duplicate' the unintended discharge, or that they were or are 'unable to duplicate' the customer's complaint." *Id.*, ¶ 48. However, Plaintiff has not alleged he ever saw, heard, or was otherwise aware of any of this alleged misrepresentations.

Plaintiff contends he has properly alleged fraudulent misrepresentation because the Complaint also alleges Defendants fraudulently represented to the Plaintiff that his rifle was fit for the purpose for which he bought it and was free of defects in materials and workmanship. However, this theory would give rise to a warranty claim, not a fraudulent misrepresentation claim. The Court concludes that to the extent Plaintiff's MMPA claim relies on fraudulent misrepresentation, it must be dismissed. Further, if

---

[3] The paragraphs are identified on pages 10-11 of Plaintiff's Suggestions in Opposition (Doc. # 38).

the Complaint intends to allege a cause of action for common law fraudulent misrepresentation, Plaintiff has failed to state a claim.

### C. Fraudulent Concealment

Defendants move to dismiss Plaintiff's for fraudulent concealment claim in Count VII. Plaintiff's MMPA claim also alleges that Defendants engaged in concealment, suppression, or omission in violation of the MMPA. Complaint, ¶ 76. Accordingly, the Court will address whether the Complaint sufficiently plead fraudulent concealment or omission under the MMPA or under the common law.

In a fraudulent concealment or nondisclosure case, "a party's silence amounts to a representation where the law imposes a duty to speak." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc. 2007). "A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other." *Id.* "Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." *Id.* Thus, to state a claim for fraudulent concealment, Plaintiff must allege (1) Defendants had knowledge of undisclosed material information, which (2) Plaintiff would not have discovered through ordinary diligence.

Here, Plaintiff has alleged that Defendants knew of several undisclosed material facts, including:

- Soon after firearms containing the Walker Fire Control were manufactured and distributed, Remington became aware that the firearms were firing without a trigger pull. Complaint, ¶¶ 29-30
- Remington upper management became aware of a March 1968 Consumer Report describing inadvertent discharges in the Model 700 rifle and expressed "extreme displeasure" to the article. *Id.*, ¶¶ 33-34.
- Defendants received thousands of complaints in the form of letters, telephone calls and emails that Remington Model 700 rifles containing the Walker Fire Control fired without a trigger pull. *Id.*, ¶ 35.

7

- Remington made the decision to recall all of its Model 600 series rifles around 1978, which utilized the Walker Fire Control, but decided not to recall the Model 700 rifles in light of full knowledge that "[a] common source of accidents with firearms is accidental discharge." *Id.*, ¶ 36-37.
- In 1994, a jury rendered a $17 million verdict against Remington related to the Model 700 design defect. *Id.*, ¶ 40.
- Remington internal documents admitted that a common source of accidents with firearms was accidental discharge. *Id.,* ¶ 48.

Plaintiff has also alleged that he would not have discovered the defect through ordinary diligence because Defendants failed to recall defective rifles, denied the defects of the rifle in public statements and in responses to customer complaints, made the decision not to warn the public about the rifles, and instructed employees not to acknowledge any problem with the rifle. *Id.*, ¶¶ 5, 28, 37, 43, 48, 53, 99. A jury could conclude that Defendants' history of concealing the rifle's defects equates to Plaintiff's inability to discover the concealed information through reasonable diligence. Plaintiff's Complaint sufficiently pleads fraudulent concealment. The Court denies Defendants' Motion to Dismiss Count VII, as well as Count I to the extent it relies on fraudulent concealment or omission.

### D. Statute of Limitations—Warranty Claims

Plaintiff brings three separate warranty claims—violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq* (Count IV); breach of express warranty (Count V); and breach of implied warranty of merchantability (Count VI). Defendant argues that Plaintiff's warranty claims are barred by the statute of limitations. The Court agrees.

A breach of warranty claim for the sale of goods is subject to a four-year statute of limitations.[4] Mo. Rev. Stat. § 400.2-725; *see also Owen v. General Motors*, 533 F.3d

---

[4] Plaintiff incorrectly states that warranty claims are subject to a five-year statute of limitations period pursuant to Mo. Rev. Stat. § 516.120. Even if Plaintiff was correct, the Court concludes that in this case it does not matter whether the limitations period is four or five years.

913, 918 (8th Cir. 2008); *Edwards v. Hyundai Motor Am.*, 163 S.W.3d 494, 496 (Mo. Ct. App. 2005) (applying the statute of limitations for state warranty claims for a MMWA claim). The limitations period begins to run when tender of delivery is made, unless the goods are sold with a warranty for future performance. Mo. Rev. Stat. § 400.2-725(1), (2). If goods are sold with a warranty for future performance, "the statute of limitations runs from the date on which the defect was or should have been discovered." *Ouellette Machinery Systems, Inc. v. Clinton Lindberg Cadillac Co.*, 60 S.W.3d 618, 621 (Mo. Ct. App. 2001); (citing Mo Rev. Stat. § 400.2-725(2)). However, the discovery rule does not extend the life of an express warranty beyond its terms. *Owen v. General Motors Corp.*, 533 F.3d 913, 918-19 (8th Cir. 2008) (applying Missouri law).

Here, Plaintiff alleges he purchased his rifle in 2000. Complaint, ¶ 10. Plaintiff's implied warranty claim and MMWA claim expired in 2004, which was nine years before this action was filed.

Plaintiff's breach of express warranty claims is also barred by the statute of limitations. In Count V, Plaintiff alleges:

> Defendants expressly warranted that the Product is fully warranted against defects in workmanship and materials under normal use and service.[] Defendants agreed "to repair and defects, or replace the firearm AT NO COST TO YOU."

Complaint, ¶ 122.[5] Although Plaintiff quoted portions of the express warranty, he did not attach a copy of the warranty to his Complaint. Defendants have attached a copy of the warranty as an Exhibit to its Suggestions in Support of its Motion to Dismiss. *See* Exhibit F (Doc. # 25-6). The Court may consider it because "documents 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1068-69 (8th Cir. 2004). The Warranty is entitled "Limited Two Year Firearm Warranty" and reads:

> Remington warrants to you, the original purchaser of a new firearm that, for two years from the date of purchase . . . your Remington firearm will be free from defects in material and workmanship.

---

[5] In his Suggestions in Opposition, Plaintiff argues that his warranty claims are broader than the written warranty issued at the time of purchase. Even if the Complaint alleged additional express warranties, the Court concludes they are also barred by the four-year statute of limitations.

9

Exhibit F (Doc. #25-6).

Plaintiff asserts that he purchased his rifle in 2000 with a warranty for future performance and the statute of limitations on his breach of warranty claim did not begin to run until the date he discovered the defect, which was in 2010 when the rifle fired without a trigger pull. The Court disagrees. Although the rifle did not fail until 2010, the two-year express warranty for future performances only lasted through 2002. The four-year limitations period expired in 2006 and Plaintiff did not file suit until 2013. *See Owen*, 533 F.3d at 919 ("The cause of action for breach of an express warranty begins to accrue upon discovery only if the defect is, or should have been, discovered within the warranty period; at the latest, the cause of action begins to accrue on the date when the express warranty expires."). Accepting Plaintiff's argument would mean that all warranty claims would accrue at the moment the product failed regardless of how far in the future the failure occurred—meaning the statute of limitations would be infinite.

Plaintiff asserts that the limitations period should be tolled by Defendants' fraudulent concealment of the nature of the rifle's defect. "To constitute concealment of a cause of action within the general rule tolling the statute of limitations on that ground the concealment must be fraudulent or intentional and, . . . there must be something of an affirmative nature designed to prevent, and which does prevent, *discovery of the cause of action*." *Owen v. General Motors Corp.*, 533 F.3d 913, 919-20 (8th Cir. 2008) (quotation omitted) (emphasis added). "To avoid the running of the statute of limitations, the fraudulent concealment 'must be something more than mere silence on defendant's part . . . .' usually the employment of some means or device to prevent discovery should be shown.'" *Id.* (quoting *Gilliam v. Gohn*, 303 S.W.2d 101, 107 (Mo. 1957). "Silence becomes misrepresentation only when there is a duty to speak, such as 'when one of the parties has superior knowledge or information not within the fair and reasonable reach of the other party.'" *Id.* (quoting *Bohac v. Walsh*, 223 S.W.3d 858, 864 (Mo. Ct. App. 2007)).

In this case, the Complaint asserts that Defendants fraudulently concealed their knowledge that the Model 700 rifles were defective and Plaintiff did not discover this until his rifle fired without a trigger pull in 2010. The "superior knowledge" that Plaintiff

10

alleges includes: Defendants knew, dating back to 1948, that some of the Model 700 rifles were defective; customers had complained that the rifles were firing without a trigger pull; Defendants decided to recall all of its Model 600 rifles but not the Model 700; and Defendants knew that a common source of accidents with firearms was accidental discharge. Complaint, ¶¶ 29, 30, 35, 37, 48. However, this alleged knowledge did not prevent the discovery of Plaintiff's breach of warranty claim and Plaintiff has not alleged that Defendants did anything affirmative to prevent the discovery of Plaintiff's cause of action. The warranty was breached when the rifle mischarged and the rifle mischarged after the warranty expired. Defendants' failure to notify Plaintiff about customer complaints, decisions not to recall the Model 700, or any other statements made in internal company memos does not amount to fraudulent concealment of Plaintiff's breach of warranty claim to justify equitable tolling of the statute of limitations. Neither does the doctrine of equitable estoppel toll the statute of limitations because Plaintiff has not alleged that Defendants induced him to delay filing his lawsuit. *See McCrary v. Truman Medical Center, Inc.*, 916 S.W.2d 831, 833 (Mo. Ct. App. 1995).

Counts IV, V, and VI are dismissed.

### E. Unjust Enrichment (Count VII)

Defendants move to dismiss Plaintiff's unjust enrichment claim arguing that Missouri law does not permit recovery for unjust enrichment when an express contract governs the subject matter of the parties' dispute. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). The Court denies Defendants' Motion to Dismiss Count VII because the Federal Rules of Civil Procedure permit pleading in the alternative. *See* Fed. R. Civ. P. 8(e)(2); *see also Owen v. General Motors Corp.*, No. 06-4067-CV-C-NKL, 2006 WL 2808632 (W.D. Mo. Sept. 28, 2006) ("The fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint.").

11

### F. Declaratory Relief (Count IX)

Finally, Plaintiff seeks a declaration that: all Remington Model 700 bolt action rifle with the patented Walker Fire Control are defective; Defendants knew of the defects; and Defendants shall issue a recall of all Remington Model 700 rifles. Defendants argue that Plaintiff's claim for declaratory relief as stated in Count IV fails because Plaintiff has other adequate remedies available. *See Graham v. Goodman*, 850 S.W.2d 351, 356 (Mo. 1993); *City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181, 193 (Mo. Ct. App. 2004). Under Missouri law, the absence of an adequate remedy at law is an element of a claim for declaratory relief. *Cincinnati Casualty Co v. GFS Balloons*, 168 S.W.3d 523, 525 (Mo. Ct. App. 2005). Defendants also argue Plaintiff has failed to allege any of the required elements for declaratory relief. The Court declines to dismiss Count IX at this stage in the proceeding. Plaintiff has alleged he is entitled to declaratory relief and incorporated by reference all the allegations contained in the Complaint when asserting Count IX. He made allegations that the Model 700 rifles were defective, Defendants knew of the defective nature of the rifle, and Defendants failed to recall the rifle. The Court denies Defendant's Motion to Dismiss Count IX. Defendant is free to reassert this defense at the summary judgment stage of this proceeding.

### IV. CONCLUSION

Defendants' Motion to Dismiss is granted in part and denied in part. The Motion to Dismiss Count I is granted to the extent Count I relies on fraudulent misrepresentation. To the extent Count I relies on fraudulent concealment, Defendants' Motion is denied. Defendants' Motion to Dismiss Counts II, III, IV, V, VI is granted. The Motion to Dismiss Count VII, VIII, and IX is denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 17, 2013　　　　　　　　　UNITED STATES DISTRICT COURT