# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

IAN POLLARD, on behalf of himself )
and all others similarly situated, )
)
    Plaintiffs, )
)
v. ) Case No. 4:13-cv-00086-ODS
)
REMINGTON ARMS COMPANY, LLC, et al. )
)
    Defendants. )
)

## DECLARATION OF STEVEN WEISBROT ON IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

I, Steven Weisbrot, hereby declare as follows:

1. I submit this declaration for the purpose of providing the Court with information regarding the design and implementation of the legal notification campaign in this case.

2. I am an Executive Vice President of Notice & Strategy at the class action notice and claims administration firm, Angeion Group, LLC ("Angeion"). Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, a nationally recognized class action notice and settlement administrator. I have been responsible in whole or in part for the design and implementation of hundreds of class action administration plans and have taught Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally. Additionally, I am the author of numerous articles on Class Action Notice, Claims Administration, Using Internet Notice in Reaching Unknown Class Members and Notice Design, in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, The American Bar Association's Class Action Newsletter, and various law firm blogs. Previous to my claims administration

967385

tenures, I was employed in private law practice and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania. In forming my expert opinion here, I and my staff draw from our in-depth class action notice and claims administration case experience as well as our work in related fields.

## BACKGROUND

3. In the case resolved by this settlement, my colleagues and I collaborated with settlement counsel on the development of the Notices (or "Notice") and Notice Program (or "Notice Plan") to inform Settlement Class Members about their rights under the proposed class action.

4. On April 14, 2015, in its Order Preliminarily Approving the Class Action Settlement Agreement, the Court appointed Angeion Group as the settlement Claims Administrator. The Court also approved the proposed notice forms and the plan of Notice, finding that, "The Notice Plan methodologies (a) protect the interests of the named Plaintiffs, the Settlement Classes, and Defendants, (b) are the best notices practicable under the circumstances, and (c) are reasonably calculated to apprise the Settlement Classes of the proposed Settlement, the Agreement, and their right to opt out and exclude themselves from or object to the proposed Settlement. In addition, the Court finds that the notice methodologies are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice of the proposed Settlement and meet all applicable requirements of law, including, but not limited to, Fed R. Civ. P. 23 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution."

5. With the Court's approval, we began implementing each element of the Notice Plan. This report will detail the successful implementation of the Notice Plan and document the completion of all of the notice activities.

## SUMMARY OF NOTICE PLAN

6. The reach of the instant notice program was specifically designed to meet due process requirements and is consistent with or exceeds other effective court-approved notice programs. Specifically, the notice program delivered a 73.7% reach with 2.96 average frequency, via publication in well-known consumer magazines and use of internet banner ads as more fully described within. The 73.7% reach figure does not include notice delivered consequent to the Facebook ads, press release, direct mail campaign and/or informational website, which were used in this matter, because those items are not capable of precise reach calculations. Nonetheless, the aforementioned items aided in informing the class of their rights and options relative to the settlement, above and beyond the use of consumer magazines and internet banner ads.

## CLASS DEFINITION AND TARGET

7. This Court conditionally certified two Settlement Classes, each of which contains subclasses. Settlement Class A, or the "Trigger Connector Class," is comprised of owners of thirteen different models of firearms that contain a trigger mechanism that utilizes a trigger connector. In contrast, Settlement Class B, or the "X-Mark Pro Class," involves firearms that contain an X-Mark Pro trigger mechanism.

8. In developing the notice program, I was advised by counsel that that there were approximately 6,650,000 firearms sold under the models referenced in Class A, although not all of them may still be in circulation. Likewise, I was advised that there are approximately 1.2 million Class B rifles.

9. Demographic and media usage data are not readily available for owners of the particular Remington Models at issue in this litigation. Consequently, to verify the notice program's effectiveness, our media team analyzed syndicated research data using the GfK MRI

967385                                    3

Case 4:13-cv-00086-ODS   Document 127-2   Filed 06/04/15   Page 3 of 10

2013 Doublebase survey.[1] We used "rifle owners," as the best representation for the class. We chose this definition because this comprehensive, over inclusive target group, best represents the Class.

10. Understanding the socio-economic characteristics, interests and practices of a target group aids in the proper selection of media to reach that target. Here, the data indicates a heavy male skew, with men accounting for 73.1% of the total audience. The majority are married (67%) and between the ages of 35 and 64, with an average age of 48. The average household income is $86,550 (compared to the national average of $74,900). Eighty percent own a home, with an average home value of $221,996.

11. In order to identify the best print vehicles to deliver messaging to the target audience, over 200 measured titles were analyzed in GfK MRI (2013 Doublebase). While coverage, or reach, was the most critical factor in title selection, other considerations were taken into account, including audience composition, pricing efficiencies and editorial relevancy.

## PUBLICATION NOTICE

12. Based on the GFK MRI data analysis, the parties placed a half page notice, substantially in the form attached as Ex. C to the Parties' Settlement Agreement, in each of the following titles which were published per the schedule below:

| Publication | Date of Publication | Circulation |
|---|---|---|
| Parade Magazine | May 17, 2015 | 22,000,000 |
| Athlon Sports | May 17, 2015 | 9,263,338 |

---

[1] GfK MRI is a leading supplier of publication readership and product usage data for the communications industry. GfK MRI offers complete demographic, lifestyle, product usage and exposure to all forms of advertising media. As the leading U.S. source of multimedia audience research, GfK MRI provides information to magazines, television and radio networks and stations, internet sites, other media, leading national advertisers, and over 450 advertising agencies – including 90 of the top 100 in the U.S. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

Case 4:13-cv-00086-ODS   Document 127-2   Filed 06/04/15   Page 54 of 110

| Publication | Date of Publication | Circulation |
|---|---|---|
| Field & Stream | June 16, 2015 | 1,254,256 |
| Guns & Ammo | July 7, 2015 | 414,670 |
| American Hunter | June 15, 2015 | 899,253 |
| American Rifleman | June 15, 2015 | 2,238,735 |

### INTERNET BANNER AND SOCIAL MEDIA NOTICE

13. In addition to the consumer magazine publications noted above, we utilized digital media to aid in delivering notice to the class members. In forming this recommendation, we utilized the online research tool, comScore. While this syndicated tool is able to profile online users across a variety of demographic, psychographic and behavioral data points, it does not currently profile rifle ownership. As such, a demographic definition was established based on "rifle owners" as reported in GfK MRI. This definition was determined as M35-64 with a HHI $75K+. This demographic profile was used to establish the top online networks for this initiative which also aided in the design and implementation of a Facebook Advertising Campaign designed to supplement to the consumer magazine and digital banner ad campaign.

### INTERNET BANNER NOTICE

14. Advertising networks were utilized because they provide the largest reach of any publisher category, allow for multiple targeting layers to ensure message exposure among the most appropriate users, and help maintain efficiencies. While many publishers were considered, the recommended partners were ultimately selected based on ability to provide the most aggressive pricing with multiple targeting layers in order to ensure vast coverage of the target audience.

15. Specifically, Xaxis, Yahoo! and Google Content Network were utilized in effectuating the digital notice.

967385

5

16. Beginning on June 1, 2015, we instituted a 4-week campaign utilizing the aforementioned publishers, utilizing standard IAB sizes (160x600, 300x250, 728x90) targeted contextually, behaviorally and by keyword to reach the class member herein. The banner ads delivered 38,844,449 impressions.

17. In order to further broaden reach among unknown class members, Angeion also released a contextually targeted Facebook Ad Campaign to alert potential class members of the settlement framework. As of today's date the Facebook Ad Campaign has garnered approximately 971,978 impressions.

## INDIVIDUAL NOTICE

18. The individual notice effort in this matter consisted of mailing Direct Notices, by U.S. Mail, proper postage prepaid, to each member of the Settlement Class identified by the Parties through reasonable efforts, including all Settlement Class Members who paid Remington to replace the Walker trigger mechanism in their Model 700 or Model Seven rifles with an X-Mark Pro trigger mechanism, as identified by Remington's records.

19. Specifically, on May 11, 2015, we sent Direct Postcard Notices by U.S. Mail to approximately 2,571 members of Settlement Class B(2) who paid Remington for the trigger replacements described above. Upon their request, an additional 102 potential class members were mailed a notice and claim form during the period of May 28, 2015 to August 26, 2015. These potential class members were likely to have requested a notice after being exposed to the notice campaign or earned media, or from being exposed to one of the poster-sized notices that Angeion mailed to approximately 699 vendors that were known to have mailed in Remington firearms on behalf of customers seeking the trigger replacements described above. These vendors were instructed to display the poster-sized notices in their stores.

## JOINT PRESS RELEASE

20. On June 26, 2015, to further broaden reach amongst the unknown class members, an informational national press release, containing a toll-free number, case website address and other pertinent information was prepared and distributed to national press outlets, as well as to websites, forums and blogs with information and news offerings. Although not part of the formal Notice Plan, the Settlement was widely reported in both national and local news media, further alerting Settlement Class Members of the Settlement Agreement. The press release can be viewed here: http://www.prnewswire.com/news-releases/310068821.html. As of the date of this declaration the Press Release has appeared on at least 225 websites and reached a potential total audience of 21,972,000 persons.

## RESPONSE MECHANISMS

21. On or about May 6, 2015, we established and staffed a toll-free telephone line to provide settlement-related information to Settlement Class Members. The toll-free telephone number was included in the published notice, long form notice and direct notice and was capable of receiving requests for Claim Forms and/or the Long Form Notice as well as providing general information concerning deadlines for opting out of the Settlement or objecting to it, and the dates of the relevant Court proceedings, including the Final Approval Hearing. Angeion has staffed and trained the telephone facility reached through the Settlement Telephone Number, and will continue to oversee those functions until twenty (20) months after the Effective Date.

22. As of today's date, there have been 5,390 calls to the toll free line.

23. Likewise, an informational case website (www.remingtonfirearmsclassactionsettlement.com) was established where class members could view relevant court documents, notice documents, the claim form, operative dates and a frequently asked questions page. The Settlement Website was also established on May 6 and can

be accessed independently or through a prominent link on the home page of Remington's website. The Settlement Website will be maintained until twenty (20) months after the Effective Date.

## CLAIMS PROCESS

24. Claim Forms have been available for submission since May 6, 2015, and may continue to be submitted until eighteen (18) months after the Effective Date.

25. We have been tracking the number of Claim Forms submitted online or through U.S. mail. As of August 14, 2015, 2,327 Claim Forms have been submitted.

26. Apart from the new X-Mark Pro retrofit available to members of Settlement Class B(1), all settlement benefits shall be provided after the Effective Date.

## REACH AND FREQUENCY

27. The notice program delivered 73.7% reach with an average frequency of 2.91 times each. The Facebook ads, press release, direct mail campaign and Settlement Website are not capable of precise reach calculations but nonetheless aided in informing the class of their rights and options relative to the settlement.

28. The reach of the target audience and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs designed to reach unidentified class members. Therefore, it is my opinion that the Notice Program is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

29. In addition, although not included in the reach percentage above, the social media campaign, informational press release and case website provided information about the Settlement to Settlement Class Members and made available to Settlement Class Members a copy of the Long Form Notice.

## CONCLUSION

30. In class action notice planning and implementation in cases such as this one, which arises in the context of a settlement, we are guided by due process considerations under the United States Constitution, as well as any applicable case law or procedural rules pertaining to notice. This background ensures that the notice program reaches the greatest practicable number of potential Class Members and that the notice itself ensures that the class members understand their rights and options under the settlement and can make an informed decision as to how they would like to proceed. All of these requirements were met in the instant case.

31. In my expert opinion, the Notice Program comported with Federal Rule of Civil Procedure 23, and also the guidance for effective notice articulated in the FJC's Manual for Complex Litigation, 4th Edition, and provided, and will continue to provide, members of the Settlement Class the best notice practicable under the circumstances, including providing individual notice to all members who could be identified through reasonable effort. The notice program provides reach and frequency evidence which courts systematically rely upon in reviewing class action notice programs for adequacy and meets or exceeds the guidelines as set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which considers 70-95% reach among class members reasonable.

32. In my expert opinion, the dissemination of the Direct Notice, Summary Notice, and Publication Notice was the best notice reasonably practicable under the circumstances.

*/s/ Steven Weisbrot*
STEVEN WEISBROT

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this 3rd day of September 2015.

_____ [signature]
NOTARY PUBLIC

My Commission Expires:
09/22/2016

```
LINDA BIDO
Notary Public
State of New Jersey
My Commission Expires Sep 22, 2016
```

967385

10