| | | |
|---|---|---|
| IAN POLLARD, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:13-CV-00086-ODS |
| REMINGTON ARMS COMPANY, LLC, et al. | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## FOURTH AMENDED SETTLEMENT AGREEMENT

994534

# TABLE OF CONTENTS

EXHIBITS ...................................................................................................................................iii

I. RECITALS ............................................................................................................................. 1

II. DEFINITIONS ..................................................................................................................... 5

III. REQUIRED EVENTS ...................................................................................................... 12

IV. SETTLEMENT BENEFITS ............................................................................................ 15

V. NOTICE OF PROPOSED SETTLEMENT TO SETTLEMENT CLASS MEMBERS ......... 18

VI. OBJECTIONS AND REQUESTS FOR EXCLUSION ...................................................... 22

VII. ATTORNEYS' FEES ....................................................................................................... 24

VIII. REPRESENTATIVE PLAINTIFF AWARDS .................................................................. 24

IX. RELEASE ......................................................................................................................... 25

X. MISCELLANEOUS PROVISIONS .................................................................................... 25

## <u>EXHIBITS</u>

Exhibit A – Claim Forms

Exhibit B – Long Form Notice

Exhibit C – Short Form Notice

Exhibit D – Direct Notice

Exhibit E – CAFA Notice

Exhibit F – Reminder Notice

This Fourth Amended Settlement Agreement ("Settlement Agreement"), including its attached Exhibits, is entered into as of this 19th day of August, 2016, by and among Plaintiffs, on behalf of themselves and on behalf of the Settlement Class Members, and Defendants Remington Arms Company, LLC, E.I. du Pont de Nemours & Company, and Sporting Goods Properties, Inc., to settle and compromise the Action and to discharge the Released Parties as set forth herein.

## I. <u>RECITALS</u>

WHEREAS, until November 30, 1993, the Delaware company known as Remington Arms Company, Inc. was a wholly-owned subsidiary of E.I. du Pont de Nemours & Company ("Du Pont") and was engaged in the business of designing, manufacturing, and selling firearms and ammunition products;

WHEREAS, on December 1, 1993, Du Pont sold substantially all of the assets of Remington Arms Company, Inc. to Remington Acquisition Corporation, Inc. ("RACI");

WHEREAS, Remington Arms Company, Inc. then changed its name to Sporting Goods Properties, Inc. ("SGPI"), and SGPI remains a wholly-owned Du Pont subsidiary;

WHEREAS, RACI is now known as Remington Arms Company, LLC ("Remington");

WHEREAS, from 1948 through November 30, 1993, SGPI manufactured certain models of firearms which incorporated trigger mechanisms utilizing a component known as a trigger connector, including the Model 700 bolt-action rifle containing the Walker trigger mechanism;[1]

WHEREAS, after December 1, 1993, Remington manufactured certain models of firearms which incorporated trigger mechanisms utilizing a component known as a trigger connector, including the Model 700 bolt-action rifle containing the Walker trigger mechanism;

WHEREAS, beginning in May 2006, Remington began to manufacture certain firearms with trigger mechanisms that did not utilize a trigger connector component;

WHEREAS, such trigger mechanisms on Model 700 and Model Seven rifles are known as X-Mark Pro® trigger mechanisms;

WHEREAS, Plaintiffs' Counsel filed four putative class actions against Defendants in federal district courts in 2012 and 2013 arising out of the marketing and sale of Model 700 bolt-action rifles containing the Walker trigger mechanism (*Chapman v. Remington Arms Co., LLC et al.*, No. 1:12-cv-24561 (S.D. Fla. Dec. 31, 2012); *Pollard v. Remington Arms Co., LLC et al.*, No. 4:13-cv-00086 (W.D. Mo. Jan. 28, 2013); *Moodie v. Remington Arms Co., LLC et al.*, No. 2:13-cv-00172 (W.D. Wash. Jan. 29, 2013); *Huleatt v. Remington Arms Co., LLC et al.*, No. 9:13-cv-00113 (D. Mont. June 4, 2013)) (hereinafter "the putative class actions");

WHEREAS, unrelated counsel filed a fifth putative class action against Defendants in federal district court in December 2013 arising out of the marketing and sale of Model 700 bolt-action

---

[1] SGPI has not been engaged in the firearms and ammunition business since December 1, 1993.

Case 4:13-cv-00086-ODS   Document 138   Filed 08/19/16   Page 4 of 35

rifles containing the Walker trigger mechanism (*Hembree v. Remington Arms Co., LLC et al.*, No. 3:13-cv-05161 (W.D. Mo. Dec. 17, 2013)), which was later dismissed pursuant to Rule 41 on December 30, 2013. The *Hembree* action was a nearly identical lawsuit that made identical claims to the putative class actions;

WHEREAS, the plaintiffs in the putative class actions alleged that the Walker trigger mechanism is defectively designed because it utilizes a trigger connector which can result in accidental discharges without the trigger being pulled, and that the value and utility of such Model 700 bolt-action rifles have been diminished as a result of the alleged defective design;

WHEREAS, the plaintiffs in the putative class actions sought damages and equitable relief, on behalf of themselves and other class members, premised on alleged economic losses, and did not seek damages or other relief for personal injury or property damage claims;

WHEREAS, the plaintiffs in *Chapman*, *Pollard*, *Moodie*, and *Huleatt* alleged that Remington's X-Mark Pro trigger mechanism was a safe alternative to the Walker trigger mechanism;

WHEREAS, Defendants filed motions to dismiss in *Chapman*, *Pollard*, *Moodie*, and *Huleatt*, resulting in the dismissal of some but not all claims in *Pollard* and *Moodie* on June 17 and August 2, 2013, respectively;

WHEREAS, the Parties served written discovery requests in *Chapman*, *Pollard*, and *Moodie*;

WHEREAS, *Chapman* was voluntarily dismissed on August 21, 2013, *Huleatt* was voluntarily dismissed on October 1, 2013, and, as set forth above, *Hembree* was voluntarily dismissed on December 30, 2013, resulting in the maintenance of *Pollard* and *Moodie* only;

WHEREAS, the Parties served responses and objections to written discovery requests in *Pollard* and *Moodie*;

WHEREAS, certain of Plaintiffs' Counsel had previously conducted extensive discovery regarding Model 700 bolt-action rifles and the Walker trigger mechanism from prior and pending litigation against Defendants, Defendants as part of that prior discovery produced hundreds of thousands of documents dealing with the core issues in the present litigation, *i.e.*, the design of the Walker trigger mechanism and the accidental discharging of rifles without a trigger pull, and the Parties in this litigation agreed that Defendants would not be required to reproduce documents that were already within Plaintiffs' Counsel's possession;

WHEREAS, Plaintiffs' Counsel reviewed over 1,000,000 pages of documents as part of their investigation and analysis into the facts of this litigation;

WHEREAS, Plaintiffs' Counsel conducted extensive investigations into the facts and circumstances related to this litigation, including consulting with experts, interviewing potential witnesses, conducting inspections of firearms, and researching and studying legal principles applicable to the issues of liability, damages, jurisdiction and procedure;

WHEREAS, while discovery was being conducted, settlement discussions commenced in the summer of 2013;

WHEREAS, in approximately September 2013, the settlement discussions progressed to the point where the Parties decided that the next step would be to participate in non-binding mediation. As a result, the Parties informed the *Pollard* and *Moodie* courts of their intention to attempt to mediate the cases, and were granted requests to maintain the current status of the cases pending mediation;

WHEREAS, the Parties, through their counsel, attended and participated in five in-person mediation sessions conducted by John W. Perry ("the Mediator"), who is an experienced, independent mediator, and further engaged in additional extensive communications with the Mediator and each other;

WHEREAS, prior to and during the mediation sessions, the Parties exchanged information and documents which allowed each side to further evaluate their claims and defenses;

WHEREAS, while mediation was ongoing, the Parties agreed that Remington's X-Mark Pro trigger mechanism could be an appropriate retrofit for Remington Model 700, Seven, Sportsman 78, and 673 firearms containing a Walker trigger mechanism, subject to confirmatory discovery and confirmation by Plaintiffs' experts;

WHEREAS, also while mediation was ongoing, the Parties agreed that the current Model 770 Connectorless Trigger Mechanism could be an appropriate retrofit for Remington Model 710, 715, and 770 firearms containing a trigger mechanism that utilizes a trigger connector, subject to confirmatory discovery and confirmation by Plaintiffs' experts;

WHEREAS, after the agreement that the X-Mark Pro trigger mechanism was an appropriate retrofit, Remington learned that the then-existing X-Mark Pro assembly process created the potential for the application of an excess amount of bonding agent, which could cause Model 700 and Model Seven bolt-action rifles containing X-Mark Pro trigger mechanisms to discharge without a trigger pull under certain limited conditions;

WHEREAS, Plaintiffs' Counsel were informed by Remington, and through their own independent investigations, of certain limited conditions which could potentially cause Model 700 and Model Seven bolt-action rifles containing X-Mark Pro trigger mechanisms to discharge without a trigger pull;

WHEREAS, the Parties are unaware of any personal injury caused by or as a consequence of an X-Mark Pro assembled with excess bonding agent;

WHEREAS, on or about April 11, 2014, and after consultation and coordination with Plaintiffs' Counsel, Remington undertook a voluntary recall of all Model 700 and Model Seven bolt-action rifles containing X-Mark Pro trigger mechanisms manufactured from May 1, 2006 to April 9, 2014;

WHEREAS, under the terms of the voluntary recall, Remington instituted a specialty cleaning, inspection, and testing process to remove any excess bonding agent that may have been applied in affected X-Mark Pro trigger mechanisms;

WHEREAS, Remington also changed and improved its assembly processes with regard to the X-Mark Pro trigger mechanism, so the excess bonding agent issue cannot occur again;

WHEREAS, Plaintiffs' and Defendants' experts agree that triggers that have been specialty cleaned, inspected, and tested are equivalent in terms of safety and performance as triggers manufactured under the changed and improved assembly process;

WHEREAS, once Remington was able to manufacture substantial numbers of X-Mark Pro trigger mechanisms to be used as replacement triggers in affected rifles, it provided recall participants the option to receive a replacement trigger or have their trigger specialty cleaned;

WHEREAS, current participants in the voluntary recall are provided with new triggers manufactured under the changed and improved assembly process rather than the specialty clean, inspection, and testing;

WHEREAS, Plaintiffs' Counsel filed motions for leave to amend the complaints in *Pollard* and *Moodie* to include additional class action allegations arising out of the X-Mark Pro recall;

WHEREAS, Plaintiffs' experts, along with their Counsel, have conducted an inspection of Remington's changed and improved assembly process, examined X-Mark Pro trigger mechanisms manufactured and assembled under the revised process, and confirmed that X-Mark Pro trigger mechanisms manufactured under the revised assembly process are safe and reliable mechanisms suitable for retrofit in Remington Model 700, Seven, Sportsman 78, and 673 firearms containing a Walker trigger mechanism;

WHEREAS, the Parties continued to mediate the cases, and following the fifth in-person mediation session, the Parties reached the material terms of this Settlement Agreement in July 2014;

WHEREAS, Plaintiffs intend to file a proposed amended complaint in *Pollard* in conjunction with this Settlement Agreement that seeks certification of two nationwide settlement classes (broken into various sub-classes) to encompass economic-loss claims involving: (1) all Model 700, 721, 722, 725, Seven, Sportsman 78, 600, 660, 673, XP-100, 710, 715, and 770 firearms manufactured by Remington or SGPI that contain trigger mechanisms that utilize a trigger connector; and (2) Model 700 and Seven bolt-action rifles containing X-Mark Pro trigger mechanisms that are subject to the April 2014 voluntary recall;

WHEREAS, in July 2014, the Parties notified this Court and the *Moodie* court of their desire to resolve both cases through the certification of the aforementioned nationwide settlement classes;

WHEREAS, Plaintiffs believe that the claims asserted in the Action have substantial merit; however, taking into account the extensive burdens and expense of litigation, including the risks and uncertainties associated with protracted trials and appeals, as well as the fair, cost-effective and assured method of resolving the claims of the Settlement Classes, Plaintiffs and their Counsel have concluded that the Settlement Agreement provides substantial benefits to the Settlement Classes, and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Classes;

WHEREAS, Defendants deny that the design of the Walker trigger mechanism or other trigger mechanisms utilizing a trigger connector are defective and can result in accidental discharges without the trigger being pulled, as well as deny Plaintiffs' remaining allegations, wrongdoing of any kind, and believe that the Action is without merit, Defendants have also taken into account the uncertainty, risk, delay, and costs inherent in litigation and agreed to enter into the Settlement Agreement to avoid any further litigation expenses and inconvenience, to remove the distraction of burdensome and protracted litigation, and to provide customers with the benefits outlined below rather than spending this money on costly litigation;

WHEREAS, Defendants have agreed to class treatment of the claims asserted in the Action solely for the purpose of effectuating the compromise and Settlement of those claims on class bases, as set forth herein, and deny that the Action properly could proceed on class bases for purposes of litigation or for trial;

WHEREAS, it is the intention and desire of the Parties to compromise, resolve, dismiss and release all allegations, disputes, and claims for damages or equitable relief arising out of, or relating to, the sale, marketing, design, and/or use of the trigger mechanisms in all of the firearms that are the subject of this Settlement on the terms set forth in the Settlement Agreement that have been or could have been brought by Plaintiffs themselves and on behalf of Settlement Class Members against Defendants;

WHEREAS, the Parties agree that the Settlement is fair, reasonable, and adequate, and is an appropriate nationwide resolution accomplished through the benefits, releases, and orders set forth in or attached to this Settlement Agreement;

WHEREAS, the Parties desire not only to end further burdensome and protracted litigation but also to create the claims process that is set forth herein;

NOW, THEREFORE, without an admission or concession on the part of Plaintiffs on the lack of merit of the Action or an admission or concession of liability or wrongdoing or the lack of merit of any defense by Defendants, it is stipulated and agreed by Defendants and Plaintiffs, acting for themselves and on behalf of the Settlement Classes, that, on the following terms and conditions, the Action shall be settled and dismissed with prejudice as among Plaintiffs, the Settlement Classes, and Defendants upon Final Approval of the Court after the hearing(s) provided for in the Settlement; and the Settlement Class Members shall release all Released Claims against Defendants and all Released Parties.

## II. <u>DEFINITIONS</u>

1.      As used in this Settlement Agreement, the following terms shall have the defined meanings set forth below.

2.      "Action" means the case originally captioned *Ian Pollard v. Remington Arms Co., LLC et al.*, No. 4:13-cv-00086, originally filed in the United States District Court for the Western District of Missouri on January 28, 2013.

3.      "Attorneys' Fees and Expenses" means the amounts approved by the Court for payment to Class Counsel, including attorneys' fees, costs, litigation expenses, fees and expenses of experts.

4.      "Claim Form" means the claim form, substantially in the form set forth in Exhibit A to this Settlement Agreement, which must be timely and fully completed and submitted by any Settlement Class Member in order to be eligible for any settlement benefits.  The Claim Form will be available on the Settlement Website and by calling the Settlement Phone Number.

5.      "Claims Period" means the time during which any Settlement Class Member may submit a Claim Form under the Settlement.  The Claims Period begins upon entry of the Preliminary Approval Order and expires eighteen (18) months after the Effective Date.

6.      "Claims Process" means the process by which Settlement Class Members may request and receive settlement benefits.

7.      "Class Action Settlement Administrator" means Angeion Group.

8.      "Class Counsel" means Richard J. Arsenault, of Neblett Beard & Arsenault; Charles E. Schaffer of Levin, Fishbein, Sedran & Berman; Eric D. Holland of Holland, Groves, Schneller & Stolze, LLC; and W. Mark Lanier of the Lanier Law Firm.

9.      "Connectorless Trigger Mechanism" means a trigger mechanism that does not utilize a trigger connector, and includes the X-Mark Pro trigger mechanism and the current Model 770 trigger mechanism.

10.      "Court" means the United States District Court for the Western District of Missouri.

11.      "Defendants" means Remington Arms Company, LLC; E.I. du Pont de Nemours & Company; and Sporting Goods Properties, Inc.

12.      "Defendants' Counsel" means the following, either individually or collectively:

        Dale G. Wills
        SWANSON, MARTIN & BELL, LLP
        330 North Wabash Avenue, Suite 3300
        Chicago, IL 60611
        Phone:  (312) 923-8266

        John K. Sherk
        SHOOK, HARDY & BACON LLP
        2555 Grand Blvd.
        Kansas City, MO 64108
        Phone:  (816) 474-6550

13.      "Direct Notice" means the form of notice described in ¶ 60.

14.      "Du Pont" means E.I. du Pont de Nemours & Company.

15. "Effective Date" means the latest date on which the Final Approval Order approving this Agreement becomes final. For purposes of this Agreement: (a) if no appeal has been taken from the Final Order, the Effective Date is the date on which the time to appeal therefrom has expired; or (b) if any appeal has been taken from the Final Order, the Effective Date means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of and/or have expired in a manner that affirms the Final Order; or (c) if Plaintiffs' Counsel and Defendants agree in writing, the Effective Date can occur on any other agreed date.

16. "Long Form Notice" means the form of notice described in ¶¶ 62-63.

17. "Mediator" means John W. Perry, Esq., of Perry Dampf Dispute Solutions, 721 Government Street, Suite 102, Baton Rouge, Louisiana 70802.

18. "Notice" means the Court-approved form of notice of this Settlement Agreement to the Settlement Classes, as described in Section V below, and substantially in the forms attached hereto as Exhibits B through D (Long Form Notice, Short Form Notice, and Direct Notice).

19. "Notice and Claims Administration Expenses" means all reasonable costs and expenses incurred in connection with preparing, printing, publishing, and mailing the Notice, as well as processing claims and administering the Settlement Agreement.

20. "Notice Plan" means the plan for disseminating Notice to the Settlement Classes, which shall include: (1) publication of a Short Form Notice; (2) Direct Notice; and (3) maintenance of a Settlement Website, which shall make available the Short Form Notice, Long Form Notice, Claim Form, Settlement Agreement, joint press release, joint motion for preliminary approval of class action settlement, Preliminary Approval Order, Class Counsel's request for fees, and Final Approval Order.

21. "Parties" means Plaintiffs and Defendants.

22. "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, business, legal entity, government or any political subdivision or agency thereof.

23. "Plaintiffs" means Dylan Anderson, Rodney Barbre, Wallace Brown, John Corsi, Chase Delperdang, Gordon Hardaway, Roger Keesy, William Massie, William Moodie, Gary Otis, Ian Pollard, James Waterman, and Mitchell Winterburn.

24. "Plaintiffs' Counsel" means the following, either individually or collectively, in whole or in part:

| | |
|---|---|
| Richard Arsenault | Charles E. Schaffer |
| NEBLETT, BEARD & ARSENAULT | Brian F. Fox |
| 2220 Bonaventure Court | LEVIN, FISHBEIN, SEDRAN & BERMAN |
| Alexandria, LA 71301 | 510 Walnut Street, Suite 500 |
| | Philadelphia, PA 19106 |

Eric D. Holland
R. Seth Crompton
HOLLAND, GROVES, SCHNELLER &
STOLZE, LLC
300 North Tucker Blvd., Ste.801
St. Louis, MO 63101

W. Mark Lanier
LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069

John R. Climaco
John A. Peca
CLIMACO, WILCOX, PECA, TARANTINO
& GAROFOLI CO., LPA
55 Public, Suite 1950
Cleveland, OH 44113

Jordan L. Chaikin
PARKER WAICHMAN LLP
27300 Riverview Center Boulevard Suite 103
Bonita Springs, FL 34134

Richard Ramler
RAMLER LAW OFFICE, PC
202 W. Madison Avenue
Belgrade, MT 59714

Timothy W. Monsees
MONSEES & MAYER, PC
4717 Grand Avenue, Suite 820
Kansas City, MO 64112

Jon D. Robinson
Christopher Ellis
BOLEN ROBINSON & ELLIS, LLP
202 South Franklin, 2nd Floor
Decatur, IL 62523

25.     "Preliminary Approval Order" means the order to be entered by the Court pursuant to the Settlement Agreement, substantially in the form that shall be transmitted to the Courtroom Deputy concurrently with the Motion for Preliminary Approval.

26.     "Released Claims" means all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been brought against Defendants, or any of them, based upon or related in any way to the trigger mechanisms in the rifle models subject to the Settlement Agreement or any component parts thereof, whether arising under statute, rule, regulation, common law or equity, and including, but not limited to, any and all claims, causes of action, rights or entitlements under any federal, state, local or other statute, law, rule and/or regulation, any consumer protection, consumer fraud, unfair business practices or deceptive trade practices laws, any legal or equitable theories, any claims or causes of action in tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi-contract, unjust enrichment, express warranty, implied warranty, and/or any injuries, losses, damages or remedies of any kind, in law or in equity, under common law, statute, rule or regulation, including, but not limited to, compensatory damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, restitution, or any other legal or equitable relief.  Released claims also include any claim for attorneys' fees, expenses, costs, and catalyst fees under any state's law or under federal law. This release expressly exempts claims for personal injury and personal property damage.

27.     "Released Persons" means Defendants Remington Arms Company, LLC; E.I. du Pont de Nemours & Company; Sporting Goods Properties, Inc.; all manufacturers and assemblers of Settlement Firearms, and each of their component parts; the entities supplying the aforementioned companies with component parts; and all past, present and future officers, directors, shareholders, employees, predecessors, affiliates, parents, subsidiaries, partners, limited partners, insurers, administrators, agents, servants, successors, trustees, vendors, subcontractors, independent contractors, attorneys, representatives, heirs, executors, experts, consultants, and assigns of all the foregoing Persons.

28.     "Releasing Persons" shall include Plaintiffs and all Settlement Class Members, and each of their respective heirs, executors, representatives, agents, assigns, and successors.

29.     "Remington" means Remington Arms Company, LLC.

30.     "Remington Authorized Repair Center" or "RARC" means the following third-party entities that Remington has authorized to remove and replace trigger mechanisms pursuant to this Settlement Agreement.   Additional Remington Authorized Repair Centers are being established and will be listed on the Settlement Website and communicated via the Settlement Phone Number.

Ahlmans Inc.
9525 West 230th Street
Morristown, MN 55052
Phone: 507-685-4244
Fax: 507-685-4280

Allison & Carey Gunworks
17311 South East Stark
Portland, OR 97233
Phone: 503-256-5166

B&B Arms
9283 US HWY 220 Business N
Randleman, NC 27317
Phone: 336-339-3199

Capital Sports & Western Wear
1092 Helena Ave
Helena, MT 59601
Phone: 406-443-2978

Carter Gunsmithing
938 West Utah Ave
Payson UT 84651
Phone: 801-465-7945

Dick Williams Gun Shop, Inc.
4985 Cole Road
Saginaw, MI 48601
Phone: 989-777-1240
Fax: 989-777-8028

J&G Gunsmithing
7680 Barton Rd.
Granite Bay, CA 95746
Phone: 916-786-9200
Fax: 916-772-1932

J&G Gunsmithing
1895A Donald St.
Reno, NV 89502
Phone: 775-826-4802
Fax: 775-826-4805

Mann & Son Sporting Goods
515 West Water Street
Pinckneyville, IL 62274
Phone: 618-357-2911
Fax: 618-357-3658

Michael D. Fix Gunshop, Inc.
334 Mt. Penn Rd.
Reading, PA 19607
Phone: 610-775-2067

Reloading Center
515 West Main Street
Burley, ID 83318
Phone: 208-878-5053
Fax: 208-878-3006

Skip's Gun Shop
837 Lake Street
Bristol, NH 03222
Phone: 603-744-3100
Fax: 603-744-3111

McClelland Gun Shop
1533 Centerville
Dallas, TX 75228
Phone: 888-486-4878
Fax: 214-328-1246

Scheels All Sport
2101 West 41st Street
Sioux Falls, SD 57105
Phone: 605-334-7767
Fax: 605-334-8936

Sports World
6841 East 41 Street
Tulsa, OK 74145
Phone: 918-742-4027
Fax: 918-742-3981

Mark's Outdoor Sports
1400-B Montgomery Hwy.
Birmingham, AL 35216
Phone: 205-822-3155
Fax: 205-822-2984

Paducah Shooters Supply
3919 Cairo Road
Paducah, KY 42001
Phone: 270-442-3242
Phone: 877-772-3006
Fax: 270-442-5022

Reynerson's Gunsmith Service, Inc.
10044 Hooper Road, Suite A
Baton Rouge, LA 70818
Phone:225-261-4860
Fax: 225-261-4865

The Gunworks of Central New York
5366 State Route 31
Verona, NY 13478
Phone: 315-363-7041
Fax: 315-363-1043

Scheels All Sport
101 Jordan Creek Parkway
West Des Moines, IA 50266
Phone: 515-727-4065
Fax: 515-727-4162

Southland Gun Works, Inc.
1228 Harry Byrd Hwy
Darlington, SC 29532
Phone: 843-393-6291
Fax: 843-393-9995

Sprague's Sports Inc.
345 W 32nd St.
Yuma, AZ 85364
Phone: 928-726-0022
Fax: 928-344-4708

Triton Arms
7668 Peppers Ferry Rd
Max Meadows, VA 24360
Phone: 276-620-8571

Wild West Guns
7100 Homer Drive
Anchorage, AK 99518
Phone: 907-344-4500
Fax: 907-344-4005

Williams Gun Sight
7389 Lapeer Road/PO Box 329
Davison, MI 48423
Phone: 800-530-9028
Phone: 810-653-2131
Fax: 840-658-2140

31.    "Settlement" means the settlement set forth in this Third Amended Settlement Agreement.

32.    "Settlement Agreement" means this document which describes the Third Amended Settlement.

33.    "Settlement Class A" means all current owners of Remington Model 700, Seven, Sportsman 78, 673, 710, 715, 770, 600, 660, XP-100, 721, 722, and 725 firearms containing a Remington trigger mechanism that utilizes a trigger connector, as set forth in the sub-class definitions for Classes A(1), A(2), A(3) and A(4), below.  Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the Action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours & Company, and each of their subsidiaries and affiliates.  Membership in Settlement Class A shall be determined as of the date of the Preliminary Approval Order.

34.    "Settlement Class B" means all current owners of Remington Model 700 and Model Seven rifles containing an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014 who have not participated in the voluntary X-Mark Pro product recall; and all current and former owners of Remington Model 700 and Model Seven rifles who replaced their rifle's original Walker trigger mechanism with an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014, as set forth in the sub-class definitions for Classes B(1) and B(2), below.  Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the Action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours & Company, and each of their subsidiaries and affiliates.  Membership in Settlement Class B shall be determined as of the date of the Preliminary Approval Order.

35.    "Settlement Classes" means Settlement Class A and Settlement Class B, and all sub-classes contained therein.

36.    "Settlement Class Members" means all persons who are members of one or both Settlement Classes and who do not timely and properly request exclusion from the Settlement Class(es) to which they belong pursuant to the terms of this Agreement.

994534

11

37. "Settlement Firearm" means Remington Model 700, Seven, Sportsman 78, 673, 710, 715, 770, 600, 660, XP-100, 721, 722, and 725 firearms containing a trigger mechanism that utilizes a trigger connector; and Remington Model 700 and Model Seven rifles containing an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014.

38. "Settlement Website" means the website that will provide Settlement Class Members with information about the Settlement, and which will be located at www.remingtonfirearmsclassactionsettlement.com.

39. "Settlement Phone Number" means the toll-free telephone number that Settlement Class Members can call to obtain information about the Settlement from an authorized representative.

40. "Settling Parties" means Settlement Class Members and Defendants.

41. "SGPI" means Sporting Goods Properties, Inc.

42. "Short Form Notice" means the form of notice described in ¶ 61 which the Class Action Settlement Administrator will cause to be published in certain print media as part of the Notice Plan.

43. "Trigger connector" means the component part in certain Remington trigger mechanisms, including the Walker trigger mechanism, which engages with the sear.

44. "Walker trigger mechanism" means the Remington trigger mechanism in certain Remington firearms, including Model 700 bolt-action rifles manufactured prior to 2006, which utilizes a trigger connector.

45. "X-Mark Pro trigger mechanism" means the Remington trigger mechanism in certain Remington firearms, including Model 700 bolt-action rifles manufactured beginning in 2006, which does not utilize a trigger connector.

46. "United States" means the United States and its territories.

### III.  REQUIRED EVENTS

47. In conjunction with filing the executed Settlement Agreement with the Court, Plaintiffs shall file a motion for leave to file an Amended Class Action Complaint naming Dylan Anderson, Rodney Barbre, Wallace Brown, John Corsi, Chase Delperdang, Gordon Hardaway, Roger Keesy, William Massie, William Moodie, Gary Otis, Ian Pollard, James Waterman, and Mitchell Winterburn as Plaintiffs and seeking certification of the following Settlement Classes:

Settlement Class A(1):

> All current owners of Remington Model 700, Seven, Sportsman 78, and 673 firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over

the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

Settlement Class A(2):

All current owners of Remington Model 710, 715, and 770, firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

Settlement Class A(3):

All current owners of Remington Model 600, 660, and XP-100 firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

Settlement Class A(4):

All current owners of Remington Model 721, 722, and 725 firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

Settlement Class B(1):

All current owners of Remington Model 700 and Model Seven rifles containing an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014 who have not participated in the voluntary X-Mark Pro product recall. Excluded from the class are: (a) persons who are neither citizens nor residents of the United

States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "X-Mark Pro Class").

Settlement Class B(2):

All current and former owners of Remington Model 700 and Model Seven rifles who replaced their rifle's original Walker trigger mechanism with an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "X-Mark Pro Class").

48.     Within a reasonable time following the filing of this Settlement Agreement with the Court, the Parties also agree to file a joint motion to stay in connection with case number 2:13-cv-00172-JCC, *Moodie, et al. v. Remington, et al.* (W.D. Wash., Coughenour, J.) (the "*Moodie*" or "Washington Action").  The joint motion to stay will seek to stay the case until the Effective Date of the Settlement as defined in this Settlement Agreement.  However, if the Settlement Agreement is not approved and/or does not become effective, the Plaintiffs and Defendants will be restored without prejudice to their respective positions in the *Pollard* and *Moodie* actions as if the Settlement Agreement, any application for its approval by the Court, and the filing of the proposed Amended Class Action Complaint in the *Pollard* Action had not been made, submitted or filed.  Defendants further agree that they will not seek to dismiss the *Moodie* action or the *Moodie* class representatives on the account that the *Moodie* class representatives were named as class representatives in the *Pollard* proposed amended complaint filed in conjunction with the approval of this proposed Settlement.

49.     The Parties shall file a joint Motion for Conditional Certification of Settlement Class, Preliminary Approval of Settlement, Approval of Notice Plan, Appointment of Notice Administrator, and Appointment of Class Counsel ("Motion for Preliminary Approval").  The Motion for Preliminary Approval shall, among other things:

(a)     Include a supporting declaration from Remington's firearms expert, Derek L. Watkins, and from Plaintiffs' expert, Charles W. Powell; and

(b)     Seek entry of a proposed Preliminary Approval Order which would, for settlement purposes only, conditionally certify the Settlement Classes; preliminarily approve the Settlement Agreement; approve the proposed Notice Plan, including the Long Form, Short Form, and Direct Notices, as set forth in Exhibits B-D and Section V of this Settlement Agreement; approve the Claim Forms, attached as Exhibit A;

appoint Angeion Group as the Class Action Settlement Administrator; appoint Class Counsel; schedule the Final Approval Hearing; and set a briefing schedule for the Final Approval Hearing.

50.     In accordance with the Court's Preliminary Approval Order, the Parties shall subsequently file a joint Motion for Final Approval of Settlement ("Motion for Final Approval"). The Motion shall seek entry of a proposed Final Approval Order that would, among other things: grant final approval of the Settlement Agreement and direct its implementation pursuant to its terms and conditions; discharge and release the Released Persons, and each of them, from the Released Claims; permanently bar and enjoin all Releasing Persons from instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit that asserts Released Claims; direct that the action be dismissed with prejudice and without costs; state pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the Final Approval Order and Judgment is a final, appealable order; and reserve to the Court continuing and exclusive jurisdiction over the Settling Parties with respect to the Settlement Agreement and the Final Approval Order.  In particular, the proposed Final Approval Order shall specify that, without in any way affecting the finality of the Final Approval Order, the Court expressly retains exclusive and continuing jurisdiction over the Parties, including the Settlement Class, in all matters relating to the administration, consummation, validity, enforcement and interpretation of the Settlement Agreement and the Final Approval Order, including, without limitation, for the purpose of: (a) enforcing the terms and conditions of the Settlement Agreement and negotiations and resolving any disputes that arise out of the implementation or enforcement of the Settlement Agreement; (b) entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate the Final Order and the Settlement Agreement (including, without limitation, orders enjoining persons or entities pursuing any claims), or to ensure the fair and orderly administration of the Settlement; and (c) entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement, and the Parties in matters relating to the implementation or enforcement of the Settlement Agreement.

## IV.  <u>SETTLEMENT BENEFITS</u>

51.     To receive any settlement benefit, a Settlement Class Member must first fully execute a Claim Form.  Claim Forms are available on the Settlement Website or by calling the Settlement Phone Number.  Claim Forms may be submitted online via the Settlement Website, by e-mail, or by U.S. Mail.  Claim Forms may be submitted beginning upon entry of the Preliminary Approval Order.

|  | By Mail: | Angeion Group | By E-Mail: | remington@angeiongroup.com |
|---|---|---|---|---|
|  |  | Attn: Remington Claims |  |  |
|  |  | Suite 660, 1801 Market Street |  |  |
|  |  | Philadelphia, PA 19103 |  |  |

52.     Settlement benefits vary based on the model and manufacture date of the Settlement Class Member's Settlement Firearm as described in ¶¶ 53-55 below.

53. <u>Settlement Class A</u>:

(a)     Settlement Class A(1) - Model 700, Seven, Sportsman 78, and 673.

A Remington Authorized Repair Center will remove the original trigger mechanism and retrofit the firearm with an X-Mark Pro manufactured under the new assembly process at no cost to the Settlement Class Member. Settlement Class Members can choose either to take their firearm to the RARC  for the retrofit or to ship their firearm to the RARC for the retrofit.  If they choose to ship their firearm, Remington will send the Settlement Class Member pre-paid shipping tags, boxes, and written instructions.  A current list of Remington Authorized Repair Centers can be found on the Settlement Website or by calling the Settlement Phone Number.  Settlement Class Members must first submit a timely Claim Form to be eligible for this benefit.

(b)     Settlement Class A(2) - Model 710, 715, and 770.

Remington will remove the original trigger mechanism and retrofit the firearm with the current Model 770 connectorless trigger mechanism at no cost to the Settlement Class Member.  Remington will send the Settlement Class Member pre-paid shipping tags, boxes, and written instructions on how to ship the firearm to Remington for the retrofit. Settlement Class Members must first timely submit a Claim Form to be eligible for this benefit.

(c)     Settlement Class A(3) - Model 600, 660, and XP-100.

These firearms were predominantly produced between 1962 and 1982 and cannot be readily retrofitted with a Connectorless Trigger Mechanism.  Settlement Class Members will be provided with voucher codes redeemable for products at Remington's online store.  A voucher code for Remington products in the amount of $12.50 will be provided to Settlement Class Members who own a Model 600, 660, or XP-100, which were manufactured between 1962 and 1982.  These voucher codes are transferable, may be combined with other Remington coupons or vouchers, and do not expire.  Settlement Class Members are not required to return their firearm(s) to Remington in order to receive a voucher code.  Settlement Class Members must, however, first timely submit a Claim Form to be eligible for this benefit.

(i)     Du Pont and SGPI shall bear the ultimate financial cost of providing these voucher benefits.

(d)     Settlement Class A(4) - Model 721, 722, and 725.

These firearms were predominantly produced between 1948 and 1961 and cannot be readily retrofitted with a Connectorless Trigger Mechanism.  Settlement Class Members will be provided with voucher codes redeemable for products at Remington's online store.  A voucher code for Remington products in the amount of $10.00 will be provided to Settlement Class Members who own a Model 721, 722, or 725, which were manufactured from 1948 to 1961.  These voucher codes are transferable, may be combined with other Remington coupons or vouchers, and do not expire.  Settlement

Class Members are not required to return their firearm(s) to Remington in order to receive a voucher code. Settlement Class Members must, however, first timely submit a Claim Form to be eligible for this benefit.

(i)     Du Pont and SGPI shall bear the ultimate financial cost of providing these voucher benefits.

54.     <u>Settlement Class B:</u>

(a)     Settlement Class B(1) - Model 700 and Seven containing an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014 that have not been repaired as part of the voluntary Product Safety Recall.

A Remington Authorized Repair Center will remove the existing X-Mark Pro trigger mechanism and retrofit the firearm with an X-Mark Pro manufactured under the new assembly process at no cost to the Settlement Class Member. Settlement Class Members can choose either to take their firearm to the RARC for the retrofit or to ship their firearm to the RARC for the retrofit. If they choose to ship their firearm, Remington will send the Settlement Class Member pre-paid shipping tags, boxes, and written instructions. A current list of Remington Authorized Repair Centers can be found on the Settlement Website or by calling the Settlement Phone Number. Settlement Class Members must first submit a timely Claim Form to be eligible for this benefit.

These models are the subject of a voluntary Product Safety Recall (see www.xmprecall.com). Both this Settlement and the Product Safety Recall entitle current owners of these firearms to have their old X-Mark Pro trigger mechanism retrofitted with a new X-Mark Pro trigger mechanism. However, the Product Safety Recall does not provide for any other benefit described herein. Current owners of rifles subject to the Product Safety Recall may still participate in this Settlement. Due to the ongoing Product Safety Recall, the trigger mechanism retrofit for these models is currently available to these Settlement Class Members, and Settlement Class Members do not need to wait until the Effective Date to receive this benefit. (*See* ¶ 56.)

(b)     Settlement Class B(2) – current and former owners of Model 700 and Seven rifles who replaced their rifle's original Walker trigger mechanism with an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014.

In addition to the retrofit, current and former owners of Model 700 and Seven rifles who replaced their firearm's original Walker trigger mechanism at their own cost with an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014 may also seek a refund of the amount of money they paid for the replacement. The Settlement Class Member must first fully and timely execute the Claim Form and any requested documentation. Refunds shall not exceed $119, which represents the most that Remington has ever charged for an X-Mark Pro installation in Model 700 or Model Seven rifles originally containing a Walker trigger mechanism. Refunds will be batch mailed four times per year.

55. <u>All Settlement Firearms</u>:

    (a)    In addition to the benefits described above in ¶¶ 53-54, all Settlement Class Members who fully execute the Claim Form will be provided with an educational DVD regarding safe firearm handling practices.

56. The Claims Period shall commence upon entry of the Preliminary Approval Order. The Claims Period shall expire eighteen (18) months after the Effective Date. Claim Forms must be received no later than eighteen (18) months following the Effective Date. Apart from the benefit in ¶ 54(a), settlement benefits will not be administered until after the Effective Date.

## V.   **NOTICE OF PROPOSED SETTLEMENT TO SETTLEMENT CLASS MEMBERS**

57. Notice of the Settlement to Settlement Class Members shall be provided pursuant to orders of the Court.

58. Plaintiffs' Counsel and Defendants agree that reasonable notice of this Agreement consistent with Due Process requirements of the United States Constitution shall be given to any and all Settlement Class Members. To effectuate such notice, Plaintiffs' Counsel and Defendants have agreed to engage the Class Action Settlement Administrator to advise them and administer the notice process. The Class Action Settlement Administrator shall implement the Notice Plan, which will be accomplished through a combination of: (a) a joint press release; (b) Direct Notices; (c) Short Form Notice; (d) Long Form Notice; (e) notice through the Settlement Website; and (f) notice through social media, including a Facebook page and internet banners. The text of the notices and the mechanisms for distributing the notices shall be subject to the approval of the Court and shall be the responsibility of the Class Action Settlement Administrator.

59. Within a reasonable time following the Motion for Preliminary Approval, the Parties will issue a joint press release.

60. As part of the Notice Plan, the Class Action Settlement Administrator shall send the Direct Notices, substantially in the form attached hereto as Exhibit D, by U.S. Mail, proper postage prepaid, to each member of the Settlement Classes identified by the Parties through reasonable efforts, including all Settlement Class Members who paid Remington to replace the Walker trigger mechanism in their Model 700 or Model Seven rifles with an X-Mark Pro trigger mechanism, as identified by Remington's records. This will be done as part of efforts to notify Settlement Class Members of their entitlement to a cash refund pursuant to ¶ 54(b) above. Remington shall provide to the Class Action Settlement Administrator this information within ten (10) days after issuance of the Preliminary Approval Order. In the event that any Direct Notice mailed to a Settlement Class Member is returned as undeliverable a second time, then no further mailing shall be required. The Class Action Settlement Administrator will promptly log each Direct Notice that is returned as undeliverable and shall provide copies of the log to Class Counsel and Defense Counsel. The Class Action Settlement Administrator shall take reasonable steps to re-mail all undeliverable Direct Notices to updated addresses provided by the National Change of Address Database maintained by the United States Post Office or by other means.

61.    As part of the Notice Plan, the Class Action Settlement Administrator shall cause the publication of the Short Form notice, substantially in the form attached hereto as Exhibit C, or in such other form as directed by the Court, in Parade Magazine, Athlon Sports, Field & Stream, Guns & Ammo, North American Hunter, American Rifleman, and American Hunter as described in the Declaration and Supplemental Declaration of the Class Action Settlement Administrator in support of the Motion for Preliminary Approval.

62.    The Long Form Notice, substantially in the form attached as Exhibit B or in such other form as directed by the Court, shall advise Settlement Class Members of the following:

(a)    General Terms: The Long Form Notice shall contain a plain and concise description of the nature of the Action; the fact of preliminary certification of the Settlement Classes for settlement purposes; and the proposed Settlement itself, including a description of the Settlement Class Members, the benefits under the proposed Settlement, and what claims are released under the proposed Settlement.

(b)    Requests for Exclusion: The Long Form Notice shall inform Settlement Class Members that they have the right to exclude themselves from (opt out of) the Settlement.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

(c)    Objections:  The Long Form Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and appear at the Final Approval Hearing.  The Long Form Notice shall provide the deadlines and procedures for exercising these rights.

(d)    The Long Form Notice shall inform Settlement Class Members about the amounts being sought by Class Counsel as Attorneys' Fees and Expenses and as Representative Plaintiff Awards to the individual Plaintiffs, and shall explain that Remington will pay the fees and expenses awarded to Class Counsel and the Representative Plaintiff Awards to the individual Plaintiffs in addition to the benefits to Settlement Class Members under the Settlement.

63.    The Long Form Notice shall be available on the Settlement Website.  The Class Action Settlement Administrator shall send the Long Form Notice via first-class mail to those persons who request it in writing or through the Settlement Phone Number.

64.    The Long Form Notice and Settlement Website shall include the Claim Forms, which shall be substantially in the form attached hereto as Exhibit A, and which shall inform Settlement Class Members that he or she must fully complete and timely return a Claim Form within the Claims Period to be eligible for settlement benefits.

65.    No later than the publication of the first notice to be published pursuant to Section V, the Class Action Settlement Administrator shall establish a toll-free telephone facility that will provide settlement-related information to Settlement Class Members.  The toll-free telephone number of such facility shall be included in the published notice.  The telephone facility shall be capable of: (a) receiving requests for Claim Forms, and/or the Long Form Notice of the Settlement described in Section V or any other materials described in this Section; (b) providing

general information concerning deadlines for opting out of the Settlement or objecting to it, and the dates of the relevant Court proceedings, including the Final Approval Hearing; and (c) mailing materials to Settlement Class Members as provided in this Section. The toll-free telephone facility and the Settlement Phone Number shall be maintained for twenty (20) months after the Effective Date. All costs associated with establishing and maintaining the toll-free telephone facility and the Settlement Phone Number shall be paid by Defendants.

66.     The Class Action Settlement Administrator shall immediately (within three (3) business days) mail Long Form Notices or Claim Forms to anyone requesting them. The Class Action Settlement Administrator shall maintain records of all of its activities, including logs of all telephone calls received and all mailings, and shall maintain an electronic database reflecting the running tally of all calls received and number and types of materials mailed by it in connection with this Settlement.

67.     No later than the publication of the first notice to be published pursuant to Section V, the Class Action Settlement Administrator shall establish a Settlement Website that will inform Settlement Class Members of the Settlement. The contents of the website must be approved by Class Counsel and Defendants. The internet address of the website shall be www.remingtonfirearmsclassactionsettlement.com and shall be included in the Notices. The Settlement Website shall include information such as: (a) generalized information concerning deadlines for opting out of or objecting to the Settlement, Claim Forms; (b) dates of relevant Court proceedings, including the Final Approval Hearing; (c) listing of the Settlement Phone Number; (d) a current list of RARCs; and (e) electronic copies of the Settlement Agreement, joint press release, Short Form Notice, Long Form Notice, Motion for Preliminary Approval, Preliminary Approval Order, Motion for Final Approval, Motion for Attorneys' Fees, Final Approval Order, and Claim Form that Settlement Class Members can download and print. The Settlement Website shall be maintained while claims are being processed by the Class Action Settlement Administrator under this Agreement and for a period that continues for twenty (20) months after the Effective Date.

68.     Remington's and Class Counsel's websites may contain a link titled "Remington Class Action Settlement." Clicking on the link will take the user to the Settlement Website.

69.     Notice of the settlement via First Class Mail pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(a), will be served on the appropriate federal and state officials no later than 10 calendar days after the filing of this Settlement Agreement with the Court. A proposed form of CAFA notice, without the accompanying attachments, is attached as Exhibit E.

70.     The Class Action Settlement Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Direct Notices; (b) handling returned mail not delivered to Settlement Class Members; (c) attempting to obtain updated address information for any Direct Notices returned without a forwarding address; (d) making any additional mailings required under the terms of this Settlement Agreement; (e) responding to requests for the Long Form Notice; (f) receiving and maintaining on behalf of the Court any Settlement Class Member correspondence regarding requests for exclusion and/or objections to the Settlement; (g) forwarding written inquiries to Class Counsel or their designee for a response, if warranted; (h) establishing a post-office box for the receipt of any correspondence; (j)

establishing the Settlement Website and Settlement Phone Number with a voice response unit with message capabilities to which Settlement Class Members may refer for information about the Action and the Settlement; and (k) otherwise implementing and/or assisting with the dissemination of the Notice of the Settlement. The Class Action Settlement Administrator shall also be responsible for, without limitation, implementing the terms of the Claims Process and related administrative activities.

71.     If the Class Action Settlement Administrator makes a material or fraudulent misrepresentation to, or conceals requested material information from, Plaintiffs' Counsel, or Defendants' Counsel, then the Party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Class Action Settlement Administrator immediately be replaced. If the Class Action Settlement Administrator Notice Administrator fails to perform adequately on behalf of Defendants or the Settlement Class, the Parties may agree to remove the Class Action Settlement Administrator. Under such circumstances, the other Party shall not unreasonably withhold consent to remove the Class Action Settlement Administrator, but this event shall occur only after Defendants' Counsel and Plaintiffs' Counsel have attempted to resolve any disputes regarding the retention or dismissal of the Class Action Settlement Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the Court for resolution.

72.     The Class Action Settlement Administrator may retain one or more persons to assist in the completion of his or her responsibilities as reasonably necessary to fulfill the Class Action Settlement Administrator's duties herein.

73.     Not later than twenty-one (21) days before the date of the Final Approval Hearing, the Class Action Settlement Administrator shall file with the Court a list of those persons who have opted out of or objected to the Settlement. The Class Action Settlement Administrator shall also file with the Court proof, by affidavit or declaration, of the aforesaid publications and mailings as well as the details outlining the scope, method and results of the notice program.

74.     The Class Action Settlement Administrator and the Parties shall promptly after receipt provide copies of any requests for exclusion, objections and/or related correspondence to each other.

75.     In addition to the Notice Plan described above, and pursuant to the Court's order of December 8, 2015, the Parties have also developed the following additional plan designed to remind Settlement Class Members of the Settlement.

76.     As part of that plan, Signal Interactive Media, LLC ("Signal") shall execute a Facebook advertising campaign that consumers can click and be redirected to the Settlement Website to file a claim. Signal shall use the two advertisements that exhibited the most effective results in terms of clicks on the advertisement during pretesting.[2] The Facebook advertising campaign is intended to reach 3.4 million potential Settlement Class Members. (Doc. 127 at 8; Doc. 127-1 at ¶¶ 12, 49.)

---

[2] Those advertisements are described in the Parties' Joint Supplemental Brief Pursuant to the Court's Order of December 8, 2015 (Doc. 127) and its attachments, which this Agreement incorporates by reference.

77. Signal shall also execute a national radio media plan that includes a 60-second notice advertisement to run for four consecutive weeks on various syndicated networks and programs. The networks account for more than 2,000 individual radio stations across the country and are anticipated to generate more than 61 million targeted impressions. Specific components of the radio plan include: (1) targeting key states/regions; (2) targeting key demographics; and (3) creating a terrestrial network composed of (a) hunting and fishing radio programs and (b) programs with strong sportsmen audiences. The radio plan shall also include custom digital streaming through iHeart radio. When the notice advertisement runs online, it will include a companion banner for consumers to click for more information. After they click, they will be redirected to the Settlement Website. (Doc. 127 at 8-9; Doc. 127-1 at ¶¶ 6, 50-58.)

78. Remington shall send an e-mail notification of the Settlement to approximately one million consumer e-mail addresses it has located from internal databases. Remington shall also send postcard notification of the Settlement to approximately 93,000 residential addresses it has located in internal databases. The proposed e-mail and postcard notification language is shown in Exhibit F.

79. Remington shall resend the Settlement Class Members who received the Direct Notice, via the due process compliant notice in paragraph 60, an additional, reminder direct mailing in the form shown as Exhibit F. Because the model number and appropriate claim form for these individuals is known (all will need the Model 700 and Seven form containing the rebate section), Remington will also include a copy of the claim form with the reminder notice.

80. Remington shall also disseminate reminder notice posters for display at more than 11,000 retail locations. The posters shall be disseminated through Remington's distribution channels: a PDF of the poster will be emailed to Remington's twelve wholesale accounts and seven retail accounts, and those accounts will in turn send the poster to more than 5,000 independent retailers and 6,000 retail stores for display. The language on the posters will mirror the language in the direct e-mail and postcard notices. *See* Exhibit F.

81. The cost of the above Settlement Class Notice (with the exception of that appearing on Class Counsel's websites under ¶ 68) shall be paid by Remington. If the Court requires methods of notice in addition to that defined above, Remington shall bear the cost of such additional notice.

## VI.  OBJECTIONS AND REQUESTS FOR EXCLUSION

### A.  Requests for Exclusion

82. A Settlement Class Member may opt out of one or both Settlement Classes. To exercise this exclusion right, the Settlement Class Member must send a written notification of the decision to request exclusion via certified or first class mail to the Class Action Settlement Administrator. The request for exclusion must bear the signature of the Settlement Class Member (even if represented by counsel), the Settlement Class Member's current address and telephone number, and state the firearm's model and serial number. If the Settlement Class Member has entered into a written or oral agreement to be represented by counsel, the request for exclusion shall also be signed by the attorney who represents the Settlement Class Member.

Such requests must be postmarked or personally delivered on such schedule as the Court may direct. In seeking Preliminary Approval of this Agreement, the parties will request that the deadline for submission of requests for exclusion shall be set on a date no less than sixty (60) days after the publication of the final notice to be published pursuant to Section V. Exclusions sent by any Settlement Class Member to incorrect locations shall not be valid. The Class Action Settlement Administrator shall promptly forward copies of any written requests for exclusion to Class Counsel and Defendants' Counsel. A list reflecting all requests for exclusion shall be filed with the Court by the Class Action Settlement Administrator no later than twenty-one (21) days before the Final Approval Hearing. If a potential Settlement Class Members files a request for exclusion, he or she may not file an objection under ¶ 86.

83.     Any Settlement Class Member who has not timely and properly filed a written request for exclusion as provided in ¶ 82 shall be bound by the Settlement and all subsequent proceedings, orders, and judgments, including, but not limited to, the Release and Final Approval Order. Any Settlement Class Member who elects to opt out of the Settlement Class pursuant to this Agreement shall not be entitled to relief under or affected by this Agreement.

84.     Settlement Class Members who have elected to opt out of the Settlement Class may withdraw their opt out requests prior to the Effective Date, but only if they accept the benefits and terms of this Settlement and dismiss with prejudice any other pending action against Defendants for economic losses arising out of the marketing and sale of firearms containing the Walker trigger mechanism and X-Mark Pro trigger mechanism.

85.     Class Counsel shall have the right to contact persons who file exclusion requests and to challenge the timeliness and validity of any exclusion requests, as well as the right to effect the withdrawal of any exclusion filed in error and any exclusion request which a Settlement Class Member wishes to withdraw for purposes of participating in the Settlement as set forth in this Agreement. The Court shall determine whether any of the contested opt-outs are valid.

## B.     Objections

86.     A Settlement Class Member may object to the Settlement. To exercise this certified or objection right, the Settlement Class Member must provide written notice of the objection via certified or first class mail to the Court and the Class Action Settlement Administrator. The objection must bear the signature of the Settlement Class Member (even if represented by counsel), the Settlement Class Member's current address and telephone number, the firearm's model and serial number, and state the exact nature of the objection including any legal support the Settlement Class Member wishes to introduce in support of the objection, and whether or not the Settlement Class Member intends to appear at the Final Approval Hearing. If the Settlement Class Member is represented by counsel, the objection shall also be signed by the attorney who represents the Settlement Class Member and state whether the attorney representing the objector will appear at the Final Approval Hearing. Such objection must be postmarked or personally delivered on such schedule as the Court may direct. In seeking Preliminary Approval of this Agreement, the parties will request that the deadline for submission of notice of objections shall be set on a date no less than sixty (60) days after the publication of the final notice to be published pursuant to Section V. Objections sent by any Settlement Class Member to incorrect locations shall not be valid.

87.     The Class Action Settlement Administrator shall forward any objection(s) to Class Counsel and Defense Counsel within five (5) days of receipt.

88.     Any Settlement Class Member who fails to comply with the provisions of ¶ 86 above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Settlement Agreement and by all subsequent proceedings, orders and judgments, including, but not limited to, the Release, the Final Order and the Final Judgment in the Actions.  The exclusive means for any challenge to this Settlement shall be through the provisions of this Section VI.B.  Without limiting the foregoing, any challenge to the Settlement or Final Approval Order shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

89.     Any Settlement Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Settlement Agreement and the terms contained herein are approved, as long as the objecting Settlement Class Member complies with all requirements of this Settlement Agreement applicable to Settlement Class Members, including the timely submission of a Claim Form and other requirements herein.

## VII.  ATTORNEYS' FEES

90.     In advance of the date set by the Court for Objections, Class Counsel agrees to request approval of an award of all attorneys' fees, costs, and expenses in a total amount not to exceed $12,500,000.  Defendants agree to pay any fees and costs awarded by the Court in an amount not to exceed $12,500,000, and will do so within seven (7) days of the Effective Date.  The amount of attorneys' fees, costs, and expenses was negotiated after the substantive terms of the Settlement, including the benefits to Settlement Class Members, and had been negotiated and agreed upon during the mediation.  The Motion for Preliminary Approval, Long Form Notice, and Short Form Notice shall state that Class Counsel will seek an award of attorneys' fees, costs, and expenses in an amount not to exceed $12,500,000.

91.     If the request for an award of attorneys' fees, costs, and expenses is finally approved by the Court and upheld on any appeal, then Remington shall pay the amount ordered by the Court via electronic transfer to Class Counsel within seven (7) business days after the Effective Date, provided that Class Counsel has submitted appropriate routing information and payment information reasonably necessary for Remington to process such transfer.

92.     Class Counsel shall distribute attorneys' fees, costs, and expenses to Plaintiffs' Counsel.  Should a dispute arise regarding the distribution, the cost shall be borne by Class Counsel and/or Plaintiffs' Counsel.

## VIII.  REPRESENTATIVE PLAINTIFF AWARDS

93.     In addition to the relief outlined above in Section IV, prior to the date set by the Court for objections Class Counsel shall seek the Court's approval of a representative plaintiff award of $2,500 each for Plaintiffs Dylan Anderson, Rodney Barbre, Wallace Brown, John Corsi, Chase Delperdang, Gordon Hardaway, Roger Keesy, William Massie, William Moodie, Gary Otis, Ian Pollard, James Waterman, and Mitchell Winterburn.  The representative plaintiff awards are to compensate Plaintiffs solely for their time and effort associated with their participation in

*Pollard* and *Moodie*, and shall not be considered reimbursement or compensation for damages or any such other payment or other relief sought in the Action. If the request for representative plaintiff awards is finally approved by the Court and upheld on any appeal, then Remington shall pay the amount ordered by the Court to each representative plaintiff within seven (7) business days after the Effective Date. The representative plaintiff awards do not preclude Plaintiffs from receiving settlement benefits. The Motion for Preliminary Approval, Long Form Notice, and Short Form Notice shall state that Class Counsel will seek representative plaintiff awards of $2,500 per plaintiff.

## IX.  RELEASE

94.    As consideration for the relief provided under the Settlement Agreement, the Releasing Persons agree to release the Released Persons from any and all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including those unknown, both at law and in equity which were or could have been brought against Defendants, or any of them, based upon or related in any way to the trigger mechanisms in the rifle models subject to the Settlement Agreement, including but not limited to those claims asserted in the Action, whether sounding in tort, contract, breach of warranty, violation of any state or federal statute or regulation, fraud, unjust enrichment, money had and received, restitution, equitable relief, punitive or exemplary damages or any other claims whatsoever under federal law or the law of any state. Released claims also include any claim for attorneys' fees, expenses, costs, and catalyst fees under any state's law or under federal law. Released claims do not include claims for personal injury and personal property damage.

95.    If any Settlement Class Member brings an action or asserts a claim against one or more Defendants contrary to the terms of the Settlement Agreement, that Defendant shall provide Class Counsel with a copy of the Settlement Class Member's complaint. Class Counsel agrees to contact counsel of record for the Settlement Class Member and advise him or her of the Settlement Agreement.

## X.  MISCELLANEOUS PROVISIONS

### A.    For Settlement Purposes Only/No Admissions

96.    The Settlement Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement or its Exhibits, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as an admission of: (a) the validity of any claim or allegation by Plaintiffs, or of any defense asserted by Defendants in the Action; (b) the propriety of class certification or proceeding in whole or in part on a classwide basis for purposes of litigation and/or trial in this Action or any future action against one or more Defendants or any Released Party; or (3) any wrongdoing, fault, violation of law, or liability if any kind on the part of any Defendant or Released Party.

97.    The Settlement Agreement is without prejudice to the rights of any Defendant or any Released Party to oppose class certification in the Action for purposes of litigation and trial should the Settlement not be finally approved or implemented for any reason.

98.     In the event that this Agreement does not become effective for any reason, this Agreement shall become null and void and of no further force and effect.  In such instance, this Agreement and any negotiations, statements, communications, proceedings, and pleadings relating thereto, and the fact that the Parties agreed to the Agreement, shall be without prejudice to the rights of Plaintiffs or Defendants or any Settlement Class Member, shall not be used for any purpose whatsoever in any subsequent proceeding in this action or in any other action in any court or tribunal, and shall not be construed as an admission or concession by any party of any fact, matter, or allegation.  In the event that this Agreement does not become effective, Plaintiffs, Defendants, and the Settlement Class Members shall be restored without prejudice to their respective positions as if the Agreement, any application for its approval by the Court, and the proposed amended complaint in the *Pollard* action had not been made, submitted, or filed. Defendants further agree that they will not seek to dismiss the *Moodie* action or the *Moodie* class representatives on the account the *Moodie* class representatives were named as class representatives in the *Pollard* proposed amended complaint filed in conjunction with the approval of this proposed Settlement.  Notwithstanding the foregoing, in the event that the Court should refuse to approve any material part of this Agreement or the Exhibits thereto or if, on appeal, an appellate court fails to affirm the judgment entered pursuant to this Agreement, then the Parties may (but are not obligated to) agree in writing to amend this Agreement and proceed with the Settlement as so amended.  Neither any award to a representative plaintiff in an amount less than that sought, nor an award of attorneys' fees, costs, and disbursement to Class Counsel in an amount less than that requested by Class Counsel, nor a reversal on appeal of any such award shall be deemed to be a modification of a material part of this Agreement that causes the Agreement to become null and void pursuant to this section.

## B.     <u>Arms' Length Negotiations</u>

99.     The Mediator has agreed to submit a declaration regarding the arms' length nature of the negotiation and overall fairness of the settlement, which shall be submitted with the Parties' Motion for Preliminary Approval.

## C.     <u>Alternative Dispute Resolution</u>

100.     So that the Settling Parties do not have to return to court, if any disputes arise out of finalization of the settlement documentation or out of the Settlement itself, said disputes are to be resolved by the Mediator first by way of mediation, and if mediation is unsuccessful then by way of final binding non-appealable arbitration.  If for any reason the Mediator is unavailable or has a conflict, the Settling Parties will agree on a substitute neutral so that this clause may be enforced without returning to Court.  If the Settling Parties cannot agree upon a substitute neutral, they will jointly petition either the Mediator or the Court to select a neutral for them to enforce this clause.  The Court shall retain jurisdiction to enter and enforce any award arising from such arbitration.

101.     The Court will retain jurisdiction to enforce the terms of this Agreement, including all terms that are not arbitrable issues and will otherwise retain jurisdiction to compel arbitration in accordance with the above provision, as well as to enforce the terms of any award in arbitration to the extent required by law.

102.   Nothing in this provision is intended to prevent the Court from exercising its authority to inquire about the bases for settlement, settlement terms, the implementation of the settlement, or the information provided to the Court in connection with preliminary or final approval of the Settlement.

## D.   Exclusive Remedy; Dismissal of Actions; Continuing Jurisdiction of the Court

103.   Each and every Settlement Class Member who has not requested exclusion pursuant to this Agreement submits to the jurisdiction of the Court and will be bound by the terms of this Settlement (including, without limitation, any and all releases).

104.   This Agreement shall be the sole and exclusive remedy for any and all Released Claims, and upon entry of the Final Judgment by the Court, each Settlement Class Member who has not opted out of the Class shall be barred from initiating, asserting, or prosecuting any such Released Claims against Defendants.

105.   Upon the entry of the Final Approval Order, this action will be dismissed with prejudice.

106.   No later than ten (10) days following the Effective Date, the Parties shall file a joint stipulation of voluntary dismissal with prejudice and without costs under Fed. R. Civ. P. 41 in case number 2:13-cv-00172-JCC, *Moodie et al. v. Remington et al.* (W.D. Wash., Coughenour, J.).

## E.   Best Efforts

107.   The Parties, Plaintiffs' Counsel, and Defendants' Counsel agree to use their best efforts to obtain Court approval of this Settlement, and agree to support all terms of the Settlement Agreement in documents filed with the Court.  They further agree to execute all such additional documents as shall be reasonably necessary to carry out the provisions of this Agreement.

## F.   Defendants' Liability

108.   The Parties understand and acknowledge that Defendants are not jointly and severally responsible for the benefits provided to Plaintiffs and Settlement Class Members under this Agreement, and that Defendants are each limited to the specific obligations assigned to them by the terms of this Agreement.  Defendants represent that they have the financial wherewithal to comply with the terms of this Settlement Agreement.

109.   Remington Outdoor Company, Inc. guarantees the financial obligations of Remington Arms Company, LLC arising under the terms of this Settlement Agreement.

## G.   Administrative Costs

110.   Except as provided in Sections V (Notice), VII (Representative Plaintiff Awards), and VII (Attorneys' Fees, Costs, and Expenses), each of the Plaintiffs and the Defendants shall be solely responsible for his, her, or its own costs and expenses.

**H.**   <u>**Taxes**</u>

111.   Plaintiffs, Settlement Class Members, and Plaintiffs' Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Settlement Agreement.

**I.**   <u>**Public Statements**</u>

112.   The Parties, Plaintiffs' Counsel, and Defendants' Counsel shall not disparage the terms of this Settlement Agreement.

**J.**   <u>**Complete Agreement**</u>

113.   This Settlement Agreement and its Exhibits represent the complete agreement as to each and every term agreed to by and among Plaintiffs, the Settlement Class(es), and Defendants.  The Settlement contemplated by this Agreement is not subject to any condition not expressly provided for herein, and there exist no collateral or oral agreements relating to the subject matter of the Agreement.  In entering into this Settlement Agreement, no Party has made or relied on any warranty, promise, inducement or representation not specifically set forth herein.  Any agreement purporting to change or modify the terms of this Agreement or the Exhibits hereto must be in writing, signed by Class Counsel and Defendants' Counsel.

114.   All the Exhibits attached hereto or referred to herein are incorporated as if fully set forth in the body of the Agreement.

**K.**   <u>**Headings for Convenience Only**</u>

115.   The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

**L.**   <u>**Severability**</u>

116.   In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Settlement Agreement shall continue in full force and effect without said provision.

**M.**   <u>**No Party Is the Drafter**</u>

117.   None of the Parties shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

**N.**   <u>**Binding Effect**</u>

118.   This Settlement Agreement shall be binding according to its terms upon, and inure to the benefit of Plaintiffs, the Settlement Class, Defendants, the Settling Parties, and their respective successors and assigns.

**O.**    **Authorization to Enter Settlement Agreement**

119.    Plaintiffs' Counsel represents that they are fully authorized to conduct settlement negotiations with counsel for Defendants on behalf of Plaintiffs and the Settlement Class, and to enter into, and to execute, this Settlement Agreement on behalf of Plaintiffs and the Settlement Class, subject to Court approval pursuant to Federal Rule of Civil Procedure 23(e).

120.    Defendants represent and warrant that: (a) it has all requisite corporate power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby; (b) the execution, delivery, and performance of this Agreement have been duly authorized by all necessary corporate action on the part of Defendants; (c) its signatories to the Agreement have full authority to sign on behalf of and to bind Defendants to its terms; and (d) this Agreement has been duly and validly executed and delivered by Defendants and constitutes its legal, valid and binding obligations.

121.    The undersigned counsel represent that they have been fully authorized to execute this Agreement on behalf of their respective clients.

**P.**    **Execution in Counterparts**

122.    This Settlement Agreement may be executed in counterparts, and the execution of counterparts shall have the same effect as if all Parties had signed the same instrument. Facsimile signatures shall be considered as valid signatures as of the date signed, although the original signature dates shall thereafter be appended to the Settlement Agreement.   This Settlement Agreement shall not be deemed executed until signed by Class Counsel and Defendants' Counsel.

**Q.**    **California Civil Code § 1542**

123.    The Parties have read, understood, and consulted with their attorneys and have been fully advised by them as to the contents and meaning of Section 1542 of the Civil Code of California, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

> The Releasing Persons shall be deemed to have knowingly and voluntarily waived and relinquished all rights and benefits afforded by California Civil Code Section 1542, and by any comparable statutory provision or common law rule that provides, in sum or substance, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it must have materially affected the settlement.   The Parties hereby agree and acknowledge that this waiver is an essential term of this Settlement Agreement

without which the consideration given herein by Defendants would not have been given.

**R.     Cancellation**

124.    Remington shall be entitled, at its option, and in its sole and absolute good-faith discretion, to cancel the Settlement and rescind its agreement to the Settlement Agreement if a sufficient number of Settlement Class Members excluding themselves from the Settlement reaches a level that, in Remington's judgment, threatens to frustrate the purposes of the Agreement.   To cancel the settlement, Remington must provide written notice to Plaintiffs' Counsel and to the Court no later than 10 days prior to the Final Approval Hearing.   In the event of cancellation of the Final Approval Hearing or this Settlement Agreement, all cost shall be borne by the Parties that incurred the expenses.

**S.     Confirmatory Discovery**

125.    Defendants have provided information requested by Plaintiffs' Counsel related to the former and current X-Mark Pro assembly process, the X-Mark Pro specialty cleaning, testing and inspection process, and potential Settlement valuation issues.   Defendants agree that this confirmatory discovery may be communicated by Plaintiffs' Counsel to the Court.   Defendants further agree to make best efforts in providing all responsive documents in reasonable time prior to December 5, 2014.   Defendants further agree to amend, supplement, and/or otherwise correct this confirmatory discovery to the extent one or more Defendants learns information that renders such discovery incomplete, unreliable, or inaccurate.   Defendants remain under such an obligation until the Effective Date.   Defendants are under no additional obligations with respect to confirmatory discovery apart from those in this paragraph.

IN WITNESS THEREOF, the Parties have executed this Settlement Agreement as of the dates set forth below.

DATED: August 19, 2016                    s/ Richard Arsenault
                                          Class Counsel


Richard Arsenault                    Charles E. Schaffer
NEBLETT, BEARD & ARSENAULT           Brian F. Fox
2220 Bonaventure Court               LEVIN, FISHBEIN, SEDRAN & BERMAN
Alexandria, LA 71301                 510 Walnut Street, Suite 500
                                     Philadelphia, PA 19106

Eric D. Holland                      W. Mark Lanier
R. Seth Crompton                     LANIER LAW FIRM
HOLLAND, GROVES, SCHNELLER & STOLZE, LLC    6810 FM 1960 West
300 North Tucker Blvd., Ste.801      Houston, TX 77069
St. Louis, MO 63101

John R. Climaco                      Jordan L. Chaikin
John A. Peca                         PARKER WAICHMAN LLP
CLIMACO, WILCOX, PECA, TARANTINO &   27300 Riverview Center Boulevard Suite
GAROFOLI CO., LPA                    103
55 Public, Suite 1950                Bonita Springs, FL 34134
Cleveland, OH 44113

Richard Ramler                       Timothy W. Monsees
RAMLER LAW OFFICE, PC                MONSEES & MAYER, PC
202 W. Madison Avenue               4717 Grand Avenue, Suite 820
Belgrade, MT 59714                   Kansas City, MO 64112

Jon D. Robinson
Christopher Ellis
BOLEN ROBINSON & ELLIS, LLP
202 South Franklin, 2nd Floor
Decatur, IL 62523


*Remainder of page intentionally left blank.*

DATED:  August 19, 2016

Counsel for Defendants Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. DuPont Nemours & Company

 s/ John K. Sherk

Dale G. Wills
SWANSON, MARTIN & BELL, LLP
330 North Wabash Avenue, Suite 3300
Chicago, IL  60611

John K. Sherk
SHOOK, HARDY & BACON  LLP
2555 Grand Blvd.
Kansas City,  MO  64108

*Remainder of page intentionally left blank.*