# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

IAN POLLARD, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

REMINGTON ARMS COMPANY, LLC, et al.,

Defendants.

Case No. 4:13-cv-00086-ODS

## DECLARATION OF DAVID BOLCOME

I, David Bolcome, hereby declare the following information to be true and correct:

1. I am an Investigator in the Civil Investigations Division of the Massachusetts Office of the Attorney General, One Ashburton Place, Boston, MA 02108. I have been employed in this capacity since March 31, 2014. I have personal knowledge of the matters contained in this declaration and could competently testify thereto if so required.

2. In my work relating to the sale of firearms in Massachusetts, I have become aware of certain potential safety issues associated with Remington Rifles. In particular, consumers, critics and litigants have alleged that a defective trigger mechanism in certain Remington rifles can result in the accidental discharge of the rifle without the trigger being pulled.

3. Using the PACER system to access federal court records, I reviewed documents on file in the following federal civil court cases:

    a. This litigation; and

    b. *Teri See and Darrel See v. Remington Arms Company, Inc., now known as, Sporting Goods Properties, Inc., A Delaware Corporation*; Case No. 3:13-CV-01765-BR (D. Or.) ("*See* Records").

4. The records I reviewed in each case are available to the public.

5. I have also reviewed a repository of documents maintained on the website of the advocacy group Public Justice at http://www.remingtondocuments.com/ ("Public Justice Repository").

6. In the course of my review, of the *See* Records and the Public Justice Repository, I found numerous documents that appear to be Remington internal corporate records that were obtained in discovery in various personal injury cases. I also found excerpts of various depositions of Remington employees and counsel.

7. Although I can't authenticate the documents I found as Remington records, they appear to have been presented to various courts in connection with litigation without apparent dispute about their authenticity.

8. I identified each of the attached documents in either the *See* Records or the Public Justice Repository at the location indicated:

    a. Remington Memo signed by JJ Burns concerning "firing pin falls when safety was released" (dated November 29, 1978) (*See* Records, Doc. No. 25-17);

    b. Remington Memo signed by E.G. Larson with accompanying lab evaluation of problems associated with lubricant build-up on trigger mechanisms (dated October 3, 1980) (*See* Records, Doc. 25-21);

    c. Remington Memo from T.L. Capeletti labeled "Action Items from December Operations Committee Meeting" regarding lubrication changes necessary to prevent "sticking sears" (dated December 15, 1981) (*See* Records, Doc. No. 25-24);

    d. Examples of lab testing reports of guns returned by customers in which the customer complained that the gun fired without a trigger pull (dated 1961-1976) (*See* Records, Doc. Nos. 25-25 and 25-26);

    e. Spreadsheet showing approximately 350 customer complaints that Remington rifles fired without a trigger pull (dated 1967-83) (*See* Records, Doc. No. 25-32);

f.  Memo dated "Received March 7, 1980" compiling more than 150 customer complaints that Remington rifles fired without a trigger pull in the period between July, 1979 and January, 1980 (*See* Records, Doc. No. 25-34);

g.  Memo dated January 22, 1980 signed by H.K. Boyle showing that more than 3,300 guns were returned as defective prior to 1980 including more than 2,400 returns between 1975 and 1980 (*See* Records, Doc. No. 25-34);

h.  Memo dated April 3, 1980 related to Interrogatory Answer listing approximately 75 court cases or customer complaints involving accidental discharge (*See* Records, Doc. No. 25-36);

i.  Approximately 85 "Gun Examination Reports" dated between 1970 and 1972 showing testing guns returned by customers complaining that the firearm discharged without a trigger pull (*See* Records, Doc No. 25-42 *et seq.*);

j.  Daily Progress Report dated April 9, 1947 signed by W.E. Leek reporting testing results showing that Remington's 721 design model rifle was "Possible to fire … by pushing the Safety to the 'off' position" and "[o]ccasionally the firing pin moves forward during the bolt locking cycle." (Public Justice Repository: http://www.remingtondocuments.com/wp-content/uploads/2016/11/foolproofsafety.pdf, p.9);

k.  Remington Memo dated August 31, 1948 signed by A.J. Greene stating "Our usual potential liability for the safety of our product is somewhat augmented by our knowledge that some Model 721 safeties have malfunctioned.  However, our liability does not seem to be out of proportion to the advantage of retaining the present sear and safety construction…" (Public Justice Repository: http://www.remingtondocuments.com/wp-content/uploads/2016/11/foolproofsafety.pdf, p. 16); and

l.  Remington Progress Report signed by D.S. Foote dated August 25, 1948, stating that despite "Field Complaints" showing that the gun fired without a trigger pull, Remington was urged to reject safer designs based "on the high expenditure required to make the conversion." (Public Justice Repository:

> http://www.remingtondocuments.com/wp-content/uploads/2016/11/foolproofsafety.pdf, pp. 13-14).

9. In addition to the records I reference in paragraph 8, there are other similar records in the *See* Records and the Public Justice Repository.

10. It is my understanding that Remington has issued recalls for certain Model 600, Model 660, and Model 710 rifles. *See* https://www.remington.com/support/safety-center/model-710-product-safety-warning-and-recall-notice, https://www.remington.com/support/safety-center/safety-modification-program/remington-model-600-660.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of January, 2017.

/s/ David Bolcome
David Bolcome